G. W. Adams

*v.*

American Zinc Company of Tennessee.

(*Knoxville*, September Term, 1958.)

Opinion filed June 5, 1959.

CARL E. REISCHLING, Knoxville, for plaintiff in error.

ARTHUR G. SEYMOUR, FRANTZ, McCONNELL & SEYMOUR, Knoxville, for defendant in error.

MR. JUSTICE TOMLINSON, delivered the opinion of the Court.

During Adams' years of employment by American Zinc Company, he developed silicosis, an occupational disease. Sec. 50-1101, T.C.A. His affliction arose out of, and because of, the performance of his duties as such employee. Within some 6 weeks after resigning, he instituted this suit or the compensation provided by the statute. The Circuit Judge sustained the employer's plea

that the suit was barred by the one year statute of limitations fixed by Section 50-1108, T.C.A. Adams has appealed.

An abundance of evidence sustains the Court's finding that Adams was an intelligent and highly regarded employee who had been continuously exposed during his forty odd years of employment to that "dust-laden atmosphere conducive of silicosis".

For several years before this suit was instituted, Adams had a chronic cough and a shortness of breath. That condition through these several years grew gradually worse until, and after consulting his own physician, he went to the company's physician, Dr. Seale, some time in 1955, but before July. He was there examined, including an X-ray. He was then advised by Dr. Seale, in the words of Adams, that "I definitely had silicosis. He did not say anything about the degree but he said I would have no trouble settling with the company", and told him "to take it easy".

The Company thereupon assigned him lighter work and continued him in that character of employment without any reduction in wages until Mr. Adams quit on August 21, 1957. His statement is that his coughing has been coming on "well gradually it has been coming on worse for two or three years, but the last year was the worst", meaning the last year he worked.

On August 26, 1956 he went to Dr. Swann, an expert in that field. He found that Adams was suffering from silicosis. He declined to say how long he had been so affected further than that it was "for at least two or three years before I examined him". Adams went back to Dr.

Swann on September 20, 1957. The doctor testified that on the basis of Adams' statement in the doctor's opinion "he was *more disabled*" than when examined by him in August, 1956. His testimony is that Adams is totally and permanently disabled.

In Judge Kelly's very scholarly and well reasoned opinion, it is said that Adams "with the knowledge acquired by him in 1955 from Dr. Seale; and with the certain and positive knowledge he acquired in August 1956 from Dr. Swann, not only suspected but actually knew he had a disabling occupational disease". Mr. Adams' suit was instituted October 14, 1957.

The testimony of Mr. Adams to the effect that Dr. Seale informed him that he "definitely had silicosis" and he "would have no trouble settling with the Company", and to "take it easy" amounts to affirmative, definite and clear information to Mr. Adams that the disease had developed to the extent that he had a valid claim for compensation. This was substantially more than two years before he instituted the suit. His statement to Dr. Swann in August, 1956 was that he had grown worse. This was more than a year before he instituted the suit. There can, therefore, be no escape from the conclusion that substantial evidence supports the above stated finding of the Trial Judge. This Court cannot, therefore, disturb this finding of fact.

The opinion of Judge Kelly states that the contention of Adams in his Court was that "the statute would begin to run only after he sustained a complete loss of wages", meaning, presumably, a total incapacity for work. The same contention runs through Mr. Adams' brief submitted in this Court, as we construe its statements. That

brief also makes the statement that "knowledge of an infirmity to a degree" starts the running of the statute, "there are no reasons advanced to support such a conclusion".

The insistence that "an infirmity to a degree" caused by the disease, meaning, of course, a lessening of the capacity to work, does not start the running of the statute is an insistence which is necessarily rejected by Section 50-1105 T.C.A. providing that "the partial" as well as the total incapacity for work resulting from an occupational disease "shall be treated as the happening of an injury by accident". A lessening of the capacity to work is necessarily a disability *"partial"* to the extent of such lessening.

Although the decision of this case must be controlled by our statute, it is interesting to note that decisions in other states seem to reflect the same conclusion that the aforesaid section 50-1105, T.C.A. expressly provides.

There is an annotation of the question in 11 A.L.R.2d commencing at page 277. At page 301 the annotator expresses the opinion that:

"* * * the courts have developed a strong inclination to regard the period allowed for the making or filing of a claim for disease contracted in an employment as not commencing to run prior to the time when *some degree of disability,* amounting to a compensable disability, has resulted." (Emphasis supplied.)

In the California case of *Argonaut Mining Company v. Industrial Accident Comm.,* 21 Cal.App.2d 492, 70 P.2d 216, 219, as annotated on pages 303, 304 of 11 A.L.R.2d it is held that the statute does not begin to run until the

occupational disease "has progressed to the extent that he is so disabled that the efficiency of his work is appreciably affected thereby". The holding of the Missouri Courts is that it must result in a disability *"of some degree* which can be the subject of compensation under the act". (Emphasis supplied.)

 The reason for the requirement that the statute of limitations shall not commence to run until there has been some degree of incapacity is because an occupational disease develops slowly and, as said in the annotation of 11 A.L.R.2d 301, "full knowledge of it, may exist long before a compensable disability develops". It is injury from the disease, rather than the disease, which entitles an employee to compensation.

It is for the same reason that our Courts hold that before the statute begins to run there must be knowledge upon the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent.

 It is also commonly known that these occupational diseases are progressive. *Wilson v. Van Buren County,* 196 Tenn. 487, 493-494, 268 S.W.2d 363.

The influence of these generally known facts as to occupational diseases is reflected in the language employed by Section 50-1108, T.C.A. providing that:

"The right to compensation for occupational disease shall be forever barred unless suit therefor is commenced within one (1) year after the *beginning,* of the incapacity for work resulting from an occupational disease * * *." (Emphasis supplied.)

■ Such beginning of incapacity is the happening of the "injury" within the meaning of Section 50-1105. The right to bring suit commences with the happening of the injury. So the expression "beginning of the incapacity", Section 50-1108, carries necessarily the same meaning as "the happening of the injury". Section 50-1105, T.C.A.

It is said in Mr. Adams' brief that "the occupational disease, and particularly silicosis, is a slow deterioration of the body, until the disease has eaten up the body and there is incapacity to work". There must be a *"begin-ning"* of that deterioration which finally "eats up the body". Section 50-1108, T.C.A. expressly says that it is at such beginning that the statute begins to run. To hold, as contended by Adams, that the statute does not begin to run until the employee has become totally incapacitated is to ignore the word "beginning" in Section 50-1108, T.C.A. In connection with a consideration of the meaning of the word "beginning", as used in this code section, there is relevant the testimony of Dr. Swann that silicosis will either "remain as it is or grow worse". "It cannot get better".

The case of *Underwood v. Combustion Engineering, Inc.*, 201 Tenn. 519, 300 S.W.2d 901, cited by Mr. Adams as controlling authority supporting his contention. In that case the claimant received an injury in 1951. He received another in October, 1954. The employer plead the statute of limitations, relying upon the 1951 injury. The Court found that although the statute had run on the 1951 injury, the 1954 injury was an entirely new one; that since that injury had occurred less than a year before the commencement of the suit the action was not barred. That case is not in point.

In 1955 the employer Company adopted a retirement system. Thereunder all employees were required to retire at 68 years of age. Mr. Adams, who was 72 years of age at the time he quit, did not want to retire. Due to his long tenure of employment, and the regard in which the Company held him, he was permitted to remain.

In 1957 business conditions at the plant required a reduction in working forces. Mr. Adams was then advised that he would have to be retired the first of October. Since he was one of the oldest employees in point of service, it was necessary that he be retired prior to others younger in service. Then it was that he quit, and went the next day to Dr. Swann for the second examination. A few weeks thereafter he instituted this suit. This, as the Court views it, is of no importance in the decision of the suit, but it is mentioned because the brief of Mr. Adams mentions it, though he does not seem to attach any importance thereto in that, as hereinbefore noted, it is said in his brief that he relies on the proposition that the statute of limitations begins "when there is an incapacity for work".

The holding of this Court is, as was that of the Trial Judge, that "the beginning" of the incapacity for work resulting from an occupational disease, within the meaning of Section 50-1108, T.C.A., is when such occupational disease, with the knowledge of the employee, or knowledge that he should have had in the exercise of reasonable caution, that he has an occupational disease and that it has injuriously affected his capacity to work to a degree amounting to a compensable disability.

Affirmed.