Francis E. Christopher

*v.*

Consolidation Coal Company

440 S.W.2d 281.

(*Knoxville*, September Term, 1968.)

Opinion filed April 18, 1969.

728

W. KEITH McCORD, Knoxville, for appellant; EGERTON, McAFEE, ARMISTEAD & DAVIS, Knoxville, of counsel.

WILLIAM J. TURNBLAZER, Middlesboro, Ky., and ROY ASBURY, Jacksboro, for appellee.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case brought by the employee against his employer. The employer is self-insured as far as compensation purposes are concerned and it is conceded by both parties that it was operating

under the provisions of the Tennessee Workmen's Compensation law, T.C.A. sec. 50-901 et seq.

The questions presented by this petition are the application of the statute requiring notice of disability, T.C.A. sec. 50-1107 and the limitation statute, T.C.A. sec. 50-1108, when the facts of this particular case come under these sections of the Code.

The petitioner was a coal miner of some thirty years' experience and has worked for the defendant from 1953 until he voluntarily quit on August 20, 1963, because of disability. At the time he quit he was hospitalized and his doctor informed him that he had rock and coal dust on his lungs and would not be able to return to work in the mines because of this disability. Shortly thereafter he moved to Cumberland County, Tennessee, where he remained four years and was hospitalized several times there and treated by three different doctors for a lung condition. All of these doctors told him that he had coal and rock dust on his lungs, and this coal and rock dust was caused by his occupation as a coal miner. One of these doctors assisted him in the year of 1963 in obtaining Social Security. This petitioner knew in July, 1963, he says, that he had an occupational disease, but he denies on direct examination that he knew what caused his disability.

The Chancellor after hearing this man testify and hearing the depositions read determined "that there was some doubt, much doubt in this mans mind as to what his condition was." The Chancellor then after making this finding determined that under the circumstances the man was excused from giving notice under the act and for not filing suit within one year from the time he quit work, and he gave judgment for certain medical bills.

This suit was not commenced until after petitioner had been examined by a specialist in Knoxville and this specialist had determined that "this was due to the disease which we saw in his lungs, although I did not personally originally feel that it was that severe." This conclusion of the doctor was made after his examinations of August, 1967, some four years after he had left the employ of the company. This doctor likewise testifies that there isn't any treatment for the disease he had and that there isn't any cure. It can remain static or it can progress after a man leaves the mines. This doctor, of course, tells how he made his examination, and his different conclusions from this, that and the other thing, but he concludes finally that the man had silicosis and/or "coal workers pneumoconiosis". This doctor likewise in testifying says that when he first examined this man that he felt that the shortness of breath and things of that kind which the man had complained of for about four years was in his mind and stated, "he does have a psychiatric diagnosis, * * *" In other words, the doctor thought a whole lot of the trouble was in the man's mind rather than his actually having trouble, but after the man was hospitalized and a thorough examination made the doctor did conclude that this man had a compensable disease acquired while he was working in these mines. As a result of that he wrote a letter to the man's doctor in Cumberland County and a "To Whom It May Concern" note, and then following this notice in 1967 within a very few days this suit was brought.

Obviously, from what has heretofore been said the employer plead the lack of notice under the statute, T.C.A. sec. 50-1107, and the statute of limitations as shown by T.C.A. sec. 50-1108.

This record shows by cross-examination of the employee the facts above set forth as well as many instances in his proof in answer to questions on cross-examination that he had been told in 1963 that he could never go back to the mines and he knew he had rock dust in his lungs and that he would be unable to work; that he knew at that time that he was totally disabled. He had been examined, and had been to see his local doctor in Oak Ridge several times. He admitted that this doctor told him at the time that he had rock and coal dust on his lungs. He likewise when he moved to Cumberland County was examined again by doctors there and said they told him about the same thing as the doctor in Oak Ridge had told him. The proof shows that he never did get any statement from these doctors though that he had silicosis or what was the matter with him. He was asked:

Q. "That you had an occupational disease?

A. "Yes, sir."

But even admitting that the doctors told him he had an occupational disease, he never did get any statement from them setting forth that he did have such a disease or what was the matter with him. He concedes that he got Social Security because he had a disease of his lungs. He was asked the question if it was an occupational disease and he answered that it was; that he knew he had rock dust on his lungs, and as a result he filed this claim for Social Security and it was granted. These questions were repeated time and again on cross-examination and in each instance the man conceded that he had such a disease, but he says very emphatically that he did not know what it was until he had the examination by Dr. Rogers in 1967 and he had then for the first time notice

that he did have silicosis or a compensable disease. The cross-examination of Christopher brought out that between 1963 and 1967 he went to two different lawyers at different places but they would not bring an action for him against his employer because he did not have a statement from a doctor that he had a compensable disease. He frankly concedes that he did that and the record is replete with the inference at least that these lawyers would not bring a suit unless he had a lettter or a direct statement from a doctor that he had such a compensable disease. There was no action taken, or notice given, or anything of the kind until after he had Dr. Rogers in Knoxville examine him, and Dr. Rogers gave him the letter to the effect that he did have a compensable disease. Then it was this suit was brought, the proof taken and with the results as heretofore indicated.

In reading Dr. Rogers' testimony it is shown very clearly that at first he didn't think there was anything wrong with the man; he tells how he examined different things, blood pressure, his breathing and things of that kind, and concluded that he was largely in a psychiatric condition until after he made these thorough tests in the hospital, and then it was that he concluded that the man had silicosis. One reading this testimony is forced to the conclusion that maybe when he went to see these other doctors they, too, didn't think he had an occupational disease or one that was compensable and that is the reason that none of them gave him a statement.

The records of these two personal doctors he had before he went to Dr. Rogers in Knoxville are not shown in this record. He was asked if the company would be permitted to have access to their records about the examination of him and he denied the company this

privilege. Of course, the denial of the privilege is a fact question and one that makes the finder of facts conclude that maybe such testimony might have been against the man, and yet the question raised is purely a factual question and one cannot say by reading this testimony that the trial judge reached the wrong conclusion. Clearly, the trial judge was warranted under this proof in reaching a conclusion that the man did not know whether or not he had an occupational disease until it was discovered in 1967, and, of course, this then brings us down to the question when such a notice must be given. This Court as well as other courts over the country has had this question before it time and time again. We in addition to reading all of our authorities, that is, the opinions written by this Court on the question, have likewise read an annotation in 11 A.L.R.2d, beginning at page 277. All of this is indeed very instructive, and a number of the cases we have read, cited in that annotation, and its follow up in the supplemental service issued by A.L.R. in 1964, are found to be very interesting on this question. We find, among other things, at page 302 of 11 A.L.R.2d this statement:

"The ideal rule, it seems, would postpone the running of the time until actual disability and a reasonably sufficient opportunity to discover the disease and its relation to the employment occur; in fact that is the substance of the rule applied in many of the cases."

We frankly agree to such a rule and it is in substance the rule that has been adopted by this Court.

The closest case to the one at bar that this Court has rendered, is that of *Tennessee Products and Chemical Corp. v. Reeves,* as found in 220 Tenn. 148, 415 S.W.2d

118, where this Court reviews many of the cases on the subject and arrives at the conclusion that the rule in Tennessee is this:

"It results before the statute of limitations in occupational disease cases begins to run there must be: First, an incapacity for work; Second, either actual or constructive knowledge an occupational disease is the cause of the incapacity for work. In relating the incapacity for work to the disease an employee is required to exercise reasonable care and diligence; and if he does not he could be charged with constructive notice."

In this *Reeves* case, the employee in the fall of 1963 made an application for Social Security benefits. He previously noticed a shortness of breath while working and had not sought medical aid. He was found totally disabled by the Social Security Administration in 1963. In February, 1964 he made application to the Veteran's Administration for a disability pension and this was granted to him in 1964. At no time had he ever been informed by his family physician, who had treated him on several occasions, that he was suffering from the occupational disease of silicosis. Early in 1965 he undertook to obtain a medical report from the Social Security Administration and the Veterans Bureau as to what he was suffering from, and he was refused. He again asked the Social Security Administration several times and was refused. It was not until April 8, 1965, that he was for the first time told that he had an occupational disease, silicois, and he filed suit within a year of that time. We affirmed the trial court in awarding him compensation under this state of facts. It is similar to the state of facts as we have in this case.

Another case decided by this Court in 1967 was that of *A. C. Lawrence Leather Co. v. Britt,* 220 Tenn. 444, 414 S.W.2d 830, 418 S.W.2d 660, wherein we found and held against the employee, reversing the trial court insofar as a certain portion of the award was concerned. We held that the man did have notice of more than a year concerning part of the award and that part he could not recover, but as to another part that he didn't know at the time he quit that it was an occupational disease, and the suit was brought very shortly after he did find out that he had an occupational disease and it was affirmed as to that.

■ ■ The late Mr. Justice Tomlinson in 1959 wrote for the Court the case of *Adams v. American Zinc Co.,* found in 205 Tenn. 189, 326 S.W.2d 425, and made some very succinct and correct legal conclusions about these same two statutes that are in question here. Among other things which he says in this case, which are unquestionably sound, is the following:

"It is injury from the disease, rather than the disease, which entitles an employee to compensation.

"It is for the same reason that our Courts hold that before the statute begins to run there must be knowledge upon the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent."

■ ■ In lots of ways the present case is comparable to the *Adams* case, and yet in none of these cases do we find the exact factual situation, which, of course, causes us always to have to consider every case on its own bottom. Some of the things in the *Adams* case clearly would be strongly against the employee in this case.

While considering the whole tenor of all these authorities though it is clear that the employee must have some knowledge or question in his mind that he does have a compensable disease before the act begins. He must have been told so by a competent physician or from other things he is told he must have reached that conclusion and it is from that time that the statute begins to run. Many of these cases go on and cite the various sundry reasons why this is true. The question of whether or not the employee does have such knowledge is a fact question.

■■ This brings us to the consideration of the notice statute (T.C.A. sec. 50-1107) and the question for application of the factual situation here is in the language of the statute, "after the first distinct manifestation of an occupational disease the employee," shall give the notice. We in the first of these cases on the question of occupational disease, *Greener v. E. I. Du pont De Nemours & Co.*, 188 Tenn. 303, 219 S.W.2d 185, [this opinion was likewise written for the Court by the late Mr. Justice Tomlinson], reach the conclusion from this language that the lead poisoning had occurred when the symptoms reached the point where doubt was so far removed as to enable a physician to diagnose the trouble as lead poisoning. In other words, it had to reach the point of being diagnosed by a physician as lead poisoning. The same application holds true to this case. If there was any doubt about it, it had to reach the point where a doctor would diagnose it as an occupational disease before the employee would have to give notice. It had to be diagnosed as that by a doctor before the statute applied.

Another case along the same line was that of *Wilson v. Van Buren County,* 196 Tenn. 487, 268 S.W.2d 363, where we considered this same language, "distinct manifesta-

tion'', and we concluded in that case that there was not a distinct manifestation of silicosis until it was revealed by the x-ray report.

In our working on the present case and reading these various cases, we have found the case of *Consolidation Coal Co. v. Porter,* which was determined by the Court of Appeals of Maryland, the court of last resort, in 1949, and it is reported in 192 Md. 494, 64 A.2d 715. We find that the Maryland Court had concluded that the Consolidation Coal Company was liable in a state of facts very similar to those here. In this *Porter* case, supra, the employee ceased to work in 1944 because of pain in his chest, a cough, etc., and he consulted doctors, but his disease was not diagnosed until January, 1947, three years later, and it was from this date that it was held that the notice statute of the state applied. The court there considered the Maryland statute which contains almost the identical language of our statute and concludes that the term "manifest", means:

"Clear, plain, evident, manifest, obvious, patent, palpable, unmistakable, conspicious, and says: 'What is clear can be seen without dimness; what is plain can be seen by anyone at the first glance without search or study; evident suggests something more of a mental process but no difficulty in seeing that the thing is true; manifest is a degree stronger than evident, the mind getting the truth as by an intuition.' No doubt the legislators used the word manifestation with something of this significance, intending that the duty of giving notice, and the risk that an employee might forfeit compensation for an occupational disease, should arise only when a symptoms of that disease should plainly appear, not when it was merely suspected or doubtful.''

The court then concludes in the past paragraph of its opinion that:

"We agree that the words of the statute now in question mean in the case now before us that limitations as to notice to the employer, and as to the time of filing of the claim, Article 101, Section 26, supra, started to run in this occupational disease case from the time the employee or some one in his behalf knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation, which was January, 1947."

Thus an award in his favor was affirmed. We have, so to speak, an identical situation here.

We come now to whether or not the statute of limitations (T.C.A. sec. 50-1108) bars the suit here. This statute as applicable here says that: "* * * within one (1) year after the beginning of the incapacity for work resulting from an occupational disease, * * *." This Court again refers to the beginning of the incapacity in the *Adams* case, supra, and holds that this section like the notice section carries the same meaning as the term, "happening of the injury", and then again says that the beginning of the incapacity under this section "is when such occupational disease, with the knowledge of the employee, or knowledge that he should have had in the exercise of reasonable caution, that he had an occupational disease, and that it has injuriously affected his capacity to work to a degree amounting to a compensable disability."

Frankly, when we heard this case argued and started our investigation of it, we felt that there was

enough evidence to show that the employee did have knowledge of the occupational disease that he had at the time he quit work, that is in 1963, and that the statute had run and the suit was barred. But after reading the various authorities mentioned herein and thinking about the matter very seriously, we have concluded that there is material evidence to support the finding of the trial judge, and, there being such, the judgment below must be affirmed. In other words, we find that the employee did not have an occupational disease within his knowledge, or knowledge that he should have had in the exercise of reasonable caution.

Thus it is, after a thorough consideration of the matter, we affirm the judgment below.