William W. BROWN, Jr. et al.

v.

ERACHEM COMILOG, INC.

Supreme Court of Tennessee,
at Nashville.

June 7, 2007 Session.

Aug. 30, 2007.

Larry R. McElhaney II, Nashville, Tennessee, for the appellant, William W. Brown, Jr.

Dale A. Tipps, Nashville, Tennessee, for the appellee, Erachem Comilog, Inc.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which CORNELIA A. CLARK and GARY R. WADE, JJ., and FRANK G. CLEMENT, JR., SP.J., joined. WILLIAM M. BARKER, C.J., not participating.

We granted review to determine when the statute of limitations begins to run in a workers' compensation case in which the employee suffers from an occupational disease. The trial court dismissed Employee's suit as untimely, reasoning that the statute of limitations began to run when Employee gave notice to Employer that she had an occupational disease. The Special Workers' Compensation Appeals Panel affirmed the trial court's judgment, relying upon *Bone v. Saturn Corp.,* 148 S.W.3d 69 (Tenn.2004), *overruled by Bldg. Materials Corp. v. Britt,* 211 S.W.3d 706 (Tenn.2007),

a gradually occurring injury case. We conclude that the Panel erred in relying upon *Bone* in affirming the trial court's finding of untimeliness. Claims involving occupational diseases are governed by Tennessee Code Annotated section 50–6–306(a) (2005). This statute provides that the statute of limitations in an occupational disease case begins to run when an employee knows or should know that she has an occupational disease and that it has injuriously affected her capacity to work to a degree amounting to a compensable injury. Because Employee filed suit within one year of becoming incapacitated from working, we hold that her claim for benefits was timely. Accordingly, we reverse the trial court's judgment.

## I. Factual Background

In 1991, Shirley Brown ("Ms. Brown") began working for Erachem Comilog, Inc. ("Erachem"), a manufacturer of electrolytic manganese dioxide, a black powder product used in dry-cell batteries. At Erachem, she was continuously exposed to chemicals in the plant. In 1999, Ms. Brown was diagnosed with lung cancer. In February 2000, she was informed that her cancer was caused by exposure to chemicals at Erachem. She gave notice to Erachem that she believed her cancer was caused by exposure to chemicals at work. Ms. Brown underwent surgery that same month, and a portion of her right lung was removed. As a result of the surgery, Ms. Brown missed work from February 14, 2000, through August 28, 2000. She returned to work at Erachem with no restrictions. Ms. Brown's supervisor testified that Ms. Brown continued to do the same job that she had done prior to the surgery, that she did not ask for any special treatment or help, and that she was able to perform "her complete load."

Ms. Brown underwent further treatment and, as a result, missed more work from December 27, 2001, through March 19, 2002. She again returned to work. Unfortunately, her cancer recurred in the spring of 2002. She continued working for Erachem, however, until July 11, 2002. Ms. Brown filed for workers' compensation benefits on April 7, 2003, and died from causes related to cancer on November 11, 2003.[1]

Ms. Brown's treating physician, Dr. Howard Burris, an oncologist, testified she was cancer-free following her surgery in 2000. He stated that after her surgery there was no disability associated with her cancer and that he expected her to recover fully and live a normal life. Dr. Burris testified that there was no evidence of a recurrence of cancer until the spring of 2002. He opined that the cause of the cancer was a combination of Ms. Brown's smoking and her exposure to toxic chemicals at work.

The trial court dismissed Ms. Brown's suit as untimely. The trial court reasoned that the statute of limitations began to run in February 2000 when Ms. Brown gave notice to Erachem that she had cancer and that it was work-related. The trial court therefore held that her suit was time-barred. The Special Workers' Compensation Appeals Panel affirmed the trial court's judgment, observing that "[o]ccupational disease cases are treated the same as gradually developing injuries for the purpose of determining when the statute of limitations commences." The Panel relied upon *Bone v. Saturn Corp.*, 148 S.W.3d 69 (Tenn.2004), *overruled by Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706 (Tenn.2007), a gradually occurring injury case, in affirming the trial court's finding

of untimeliness. We granted review to determine whether Ms. Brown's claim for benefits was untimely.

## II. Analysis

We review workers' compensation cases de novo upon the record of the trial court, accompanied by a presumption that the finding of the trial court is correct, unless the evidence preponderates otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2005); *Layman v. Vanguard Contractors, Inc.*, 183 S.W.3d 310, 314 (Tenn.2006). The issue on appeal involves the construction of a statute, specifically the statute of limitations applicable to this case. Whether a claim is barred by an applicable statute of limitations is a question of law. *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn.1996). We review questions of law de novo without a presumption of correctness. *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn.2003).

When construing a statute, our primary purpose is to give effect to the legislative intent. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000). "We determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id.* If a statute's language is clear, we must apply its plain meaning without a forced interpretation. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn.2000). We are also required to construe liberally the Workers' Compensation Law in order to secure benefits for injured workers. *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 713 (Tenn.2007).

1. William Brown, Jr., Ms. Brown's surviving spouse, became the named plaintiff in this case after Ms. Brown's death.

■ The Special Workers' Compensation Appeals Panel in the instant case, citing *Smith v. Asarco, Inc.*, 627 S.W.2d 946 (Tenn.1982), stated that "[o]ccupational disease cases are treated the same as gradually developing injuries for the purpose of determining when the statute of limitations commences." We disagree with this statement. First, a careful review of *Smith* reveals no discussion or comment equating the statute of limitations for occupational diseases with the statute of limitations for gradually occurring injuries. Second, while both types of cases pose similar difficulties in determining when the statute of limitations begins to run, the determination is made in the context of two different statutes of limitations. Claims involving gradually occurring injuries are governed by Tennessee Code Annotated section 50–6–224(1) (2005), the one-year statute of limitations for accidental injuries. Claims involving occupational diseases, however, are governed by Tennessee Code Annotated section 50–6–306(a) (2005). Thus, it was error for the Panel to rely upon *Bone v. Saturn Corp.*, 148 S.W.3d 69 (Tenn.2004), a gradually occurring injury case, in affirming the trial court's finding of untimeliness.[2]

■ The statute of limitations in an occupational disease case is governed by Tennessee Code Annotated section 50–6–306(a) (2005),[3] which states, in pertinent part, that it begins to run "as of the date of the beginning of the incapacity for work resulting from an occupational disease." In *Adams v. American Zinc Co.*, 205 Tenn. 189, 326 S.W.2d 425, 428 (1959), this Court determined that the statutory limitations period for occupational disease claims commences when an employee knows or should know "that he has an occupational disease *and* that it has injuriously affected his capacity to work to a degree amounting to a compensable injury." (emphasis added). In *Tennessee Products & Chemical Corp. v. Reeves*, 220 Tenn. 148, 415 S.W.2d 118, 119 (1967), we stated that "before the statute of limitations in occupational disease cases begins to run there must be: First, an incapacity for work; Second, either actual or constructive knowledge an occupational disease is the cause of the incapacity for work." The statute of limitations for an occupational disease claim, therefore, is not triggered by an employee's knowledge of her occupational disease alone. Instead, it is clear that Tennessee Code Annotated section 50–6–306(a) requires an actual "incapacity for work" to trigger the statute of limitations.

■ This Court has held that the "incapacity for work" resulting from an occupational disease begins when the employee knows or reasonably should know that she has an occupational disease and that it has injuriously affected her capacity to work to a degree amounting to a com-

2. We recently overruled *Bone* in *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 708–09 (Tenn.2007). In *Britt*, we held that the statute of limitations for a gradually occurring injury does not begin until the employee is prevented from working due to the employee's injury. *Id.* at 708. We reasoned that "it is unfair to start the running of the statute of limitations on the date the injury was first reported if the employee continues to work after having given notice of his injury" and that "[i]f the rule were otherwise, the employee would have less incentive to provide notice to the employer." *Id.* at 712.

3. The statute of limitations for an occupational disease in effect at the time of the trial in this case was worded slightly differently. *See* Tenn.Code Ann. § 50–6–306(a) (2002). It states that the statute of limitations begins to run "*after* the beginning of the incapacity for work resulting from an occupational disease." *Id.* (emphasis added). Because our analysis will not differ under either version of the statute, we have cited to the current version.

pensable disability. *Adams,* 326 S.W.2d at 428. In occupational disease cases, the "incapacity for work" required under Tennessee Code Annotated section 50–6–306(a) is generally defined as the time at which an employee can no longer perform the duties of her position. In *Adams,* the employee was diagnosed with silicosis, and his physician advised him to "take it easy." *Id.* at 426. After this diagnosis, Adams accepted an assignment to lighter work but did not become totally incapacitated from working until approximately two months prior to filing suit. This Court concluded that the statute of limitations had run because Adams knew more than a year before he filed suit that he had an occupational disease that had developed to the extent that it was compensable. *Id.* Thus, a partial incapacity for work caused by an occupational disease may trigger the running of the statute of limitations under Tennessee Code Annotated section 50–6–306(a) if the employee knows or should know "in the exercise of reasonable caution" that she has an occupational disease and that her disease has affected her capacity to work to a compensable extent. *Id.* at 428.

An "incapacity for work" also may occur when an employee's occupational disease compels her to request a different position or when an employee is told by a doctor that she must stop working. *See, e.g., Bilyeu v. Sherwin Williams Co.,* No. M2001–01338–WC–R3–CV, 2002 WL 1349538, at *3 (Tenn.Workers Comp.Panel June 21, 2002) (concluding that the statute of limitations did not run until employee's condition worsened and his physician told him that he should not work in the same work environment any longer); *Lewis v. Ins. Co. of Pa.,* No. 01S01–9702–CV–00036, 1998 WL 75523, at *2 (Tenn.Workers Comp.Panel Feb. 24, 1998) (holding that the statute of limitations did not begin to run until employee's condition forced him

to seek a job transfer). Thus, the date on which the employee is forced to quit her job or ask for reassignment to another position because of her occupational disease may determine the running of the statute of limitations if the employee has either actual or constructive knowledge that an occupational disease is the cause of her incapacity for work.

We are mindful that an employee may seek treatment for an occupational disease and may be absent for periods of time for that treatment. For the purpose of the statute of limitations, "the beginning of the incapacity for work resulting from an occupational disease" starts when the employee is unable to perform her regular employment duties, not from the date of treatment. "It is injury from the disease, rather than the disease, which entitles an employee to compensation." *Adams,* 326 S.W.2d at 427. Stated otherwise, an employee's absence from work for treatment will not begin the running of the statute of limitations in an occupational disease case if the employee's capacity to work is affected only by the treatment, not by the disease.

This conclusion is consistent with the remedial policy of the Workers' Compensation Law and the goal of maintaining an employee's capacity to work by providing complete and early access to reasonable and necessary medical treatment. *See Moore v. Town of Collierville,* 124 S.W.3d 93, 99 n. 1 (Tenn.2004). Because employers must furnish treatment for occupational diseases that do not disable an employee, we have observed that an employee's claim for workers' compensation disability benefits may not be ripe even if she is receiving treatment. *See Ingram v. Aetna Cas. & Sur. Co.,* 876 S.W.2d 91, 93–94 (Tenn.1994); *see also* Tenn.Code Ann. § 50–6–204(b)(1) (Supp. 2006). The mere payment of temporary

benefits during a treatment period does not affect the running of the statute of limitations in an occupational disease case. *See Ingram,* 876 S.W.2d at 93–94.

 Ms. Brown was absent from work for treatment between February and August 2000. In August 2000, Ms. Brown returned without restrictions to the same position she had held prior to her absence. Despite periods of absence due to treatment, Dr. Burris testified that he believed that Ms. Brown was cancer-free following her surgery in 2000 and that her cancer did not progress to the point that it adversely affected her capacity to work until she stopped working for Erachem on July 11, 2002. Dr. Burris did not advise her to stop working prior to that date. Dr. Burris testified that Ms. Brown suffered no disability with regard to her cancer at the time she recovered from surgery and returned to work. Ms. Brown's supervisor testified that Ms. Brown continued to do the same job she had done prior to the surgery, that she did not ask for any special treatment or help, and that she was able to perform "her complete load." It was not until July 11, 2002, that Ms. Brown could no longer fulfill the responsibilities of her employment. Ms. Brown filed her workers' compensation claim in April 2003. Accordingly, we hold that her claim was filed within the one-year statute of limitations period, which began on July 11, 2002, the date of "the beginning of the incapacity for work resulting from an occupational disease." Tenn.Code Ann. § 50–6–306(a) (2005).

 We disagree with the trial court and the Panel that Ms. Brown's 2000 report to Erachem that she believed her injury was work-related started the running of the statute of limitations. Under Tennessee Code Annotated section 50–6–306(a), the statute of limitations for an occupational disease claim is not triggered by an employee's notice of her injury if the injury has not yet become incapacitating. An occupational disease may manifest itself and produce symptoms years before the disease results in an actual incapacity to work. *See Adams,* 326 S.W.2d at 427 (explaining that "[t]he reason for the requirement that the statute of limitations shall not commence to run until there has been some degree of incapacity is because an occupational disease develops slowly and … 'full knowledge of it may exist long before a compensable disability develops'") (citation omitted). If Ms. Brown had filed for workers' compensation benefits when she first gave notice of her injury, she would have received limited benefits because her cancer was not considered permanent and she had no disability associated with the cancer at that time. We therefore conclude that Tennessee Code Annotated section 50–6–306(a) does not require an injured employee who is not yet incapacitated from working to assert her claim at the time she gave notice of her injury to her employer in order to preserve the cause of action.

## Conclusion

We hold that Ms. Brown's claim for benefits was timely. Accordingly, we reverse the trial court's judgment that the statute of limitations bars her lawsuit and remand this case to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Erachem Comilog, Inc., for which execution may issue if necessary.

WILLIAM M. BARKER, C.J., not participating.