**FILED**

**January 13, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:50 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Ronald Pool,<br>        Employee,<br>v.<br>Jarmon D&Q Transport,<br>        Employer,<br>And<br>Riverport Insurance Company,<br>        Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2015-06-0510<br><br>State File Number: 48782-2015<br><br>Chief Judge Kenneth M. Switzer |

---

## EXPEDITED HEARING ORDER ON REMAND

---

This cause came before the undersigned workers' compensation judge upon remand from the Board of Appeals for the sole determination of whether the Employee, Ronald Pool, provided timely notice of his alleged occupational disease under Tennessee Code Annotated section 50-6-305 (2015). The Court also notes that the Board of Appeals commented on its poor phraseology on the "right" to a causation opinion. The Court, after determining no need for additional proof, reviewed the expedited hearing record and finds that Mr. Pool satisfied his burden to show he provided sufficient notice of his alleged occupational disease to the Employer, Jarmon D&Q Transport.

## Analysis

The Workers' Compensation Law provides: "Within thirty (30) days after *the first distinct manifestation* of an occupational disease, the employee, or someone in the employee's behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury." Tenn. Code Ann. § 50-6-305(a) (2015) (emphasis added).

In *Christopher v. Consolidation Coal Co.,* 440 S.W.2d 281 (Tenn. 1969), the Supreme Court specifically interpreted the meaning of the phrase "after the first distinct manifestation of the occupational disease of the employee." Referring to previous Tennessee cases, the Court generally concluded if, for the purposes of notice to the

1

employer, there were any doubt about whether a disease was "occupational," there is no distinct manifestation until it reaches a point where a doctor would diagnose it as an occupational disease. *Id.* at 285; *see Greener v. E.I. DuPont De Nemours & Co.,* 219 S.W.2d 185, 187 (Tenn. 1949) and *Wilson v. Van Buren County,* 268 S.W.2d 363, 367 (Tenn. 1954).

Further, the *Christopher* Court cited with approval a Maryland Court of Appeals[1] decision interpreting the term "manifest" in an almost identical statute as follows:

> Clear, plain, evident, manifest, obvious, patent, palpable, unmistakable, conspicuous, and says: 'What is clear can be seen without dimness; what is plain can be seen by anyone at the first glance without search or study; evident suggests something more of a mental process but no difficulty in seeing that the thing is true; manifest is a degree stronger than evident, the mind getting the truth as by an intuition.' No doubt the legislators used the word manifestation with something of this significance, intending that the duty of giving notice, and the risk that an employee might forfeit compensation for an occupational disease, should arise only when a symptom[s] of that disease should plainly appear, not when it was merely suspected or doubtful.

*Christopher,* 440 S.W.2d at 286.

The Court additionally quoted with approval the following language:

> We agree that the words of the statute now in question mean in the case now before us that limitations as to notice to the employer, and as to the time of filing of the claim . . . started to run in this occupational disease case from the time the employee or some one in his behalf knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation[.]

*Id.*

Mr. Pool testified by phone and submitted an affidavit in support of his claim. He wrote: "Some time at the end of 2014 and January of 2015 I started having Upper Respiratory problems from mold in the vehicles at work. At that time I had no understanding about Mold Sickness and how to understand the symptoms." (Ex. 3 at 4.) In February 2015, the Montgomery County Health Department diagnosed him with asthma. *Id.* at 5. Mr. Pool sought further treatment in March, including a lung x-ray. *Id.* at 6. In April 2015, the Emergency Room at Gateway Medical Center diagnosed him

---

[1] This is the Court of last resort in Maryland.

with pneumonia and cardiac risk factors. *Id.* At this point, Mr. Pool "started to get curious" regarding his symptoms. *Id.* He decided to conduct mold testing on his own. *Id.* at 7. On May 1, 2015, Mr. Pool performed an indoor air quality test in a particular van and in a few days observed mold growths. *Id.* On June 4, 2015, according to Mr. Pool, a triage nurse at the Montgomery County Health advised "there was no yeast or mold isolated after 4 weeks." *Id.* at 8. From June 7-9, 2015, he performed air quality tests on van #13 and #20. *Id.* On June 25, he presented his immediate supervisor with two petri dishes with mold growth. *Id.* at 9.

At this point, the Court adopts the Board of Appeals' opinion regarding the factual history.

> Employee testified that on June 25, 2015, he "sought help from my immediate supervisor Tim Hembree," telling him that he "required medical treatment with a workers' compensation doctor." According to Employee, "I brought to his attention evidence of mold in a petri tray and – in petri trays and results that I had from my investigation on the vehicle that I was hired to work in." Employer completed a First Report of Work Injury on the same date, which described how the "injury" occurred as follows: "[Employee] came to the supervisor with mold samples that he got from the vans that is causing [Employee] an allergic reaction to sinus area."
>
> Employer provided a panel of physicians on June 25, 2015, and Employee was seen the following day by Dr. Giriprasadarao Korivi, whom Employee selected from the panel. The history of present illness in Dr. Korivi's June 26, 2015 report states that Employee "has had recurrent 'sinus problems' [and] sinus infections off and on," and notes that Employee "feels fine when he is not working." The report states that Employee "says it is an indoor air quality issue at work and is causing his allergies and repeated sinus infections." Employee was diagnosed at the June 26, 2015 visit with "[a]llergic rhinitis, cause unspecified." The assessment states "[w]orker in work-related accident," and includes an "allergy & immunology referral." Employee was released to work, but was instructed to "[a]void allergen exposure."
>
> Employer offered a panel of allergists on July 2, 2015, from which Employee chose Dr. John Overholt. Before Employee could see Dr. Overholt, Employer denied the claim on July 7, 2015, stating in a letter to Employee that his claim was not compensable due to a "[l]ack of [i]njury as defined by [Tennessee Code Annotated] Section 50-6-301."
>
> The Appeals Board in *McCord v. Advantage Human Resourcing* explained:

3

An employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). *A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014). Moreover, we note that since an expedited hearing is interlocutory in nature, either party may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order.

*McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015) (emphasis added).

Therefore, upon the limited scope of this remand, the Court finds that Mr. Poole provided notice of a potential work-related injury within the timeframe required by section 50-6-305. That section sets a deadline for providing notice to an employer of an occupational disease based upon "the first distinct manifestation" of same. Based on the case law cited above, Mr. Poole provided notice *even before* the first distinct manifestation occurred, and is therefore entitled to medical benefits. For the same reasons set forth in the original opinion, Mr. Poole is entitled to treatment from Dr. John Overholt, previously selected from a panel provided by Jarmon.

Consistent with the comments from the Board in its last paragraph of the remand, the Court acknowledges that a statement of causation from Dr. Overholt or other medical experts is the responsibility of the parties to obtain. The Court merely orders the initiation of, or, in this case, the continuation of medical benefits.

4

**IT IS, THEREFORE, ORDERED as follows:**

1. Jarmon or its workers' compensation carrier shall authorize medical treatment by Dr. John Overholt for Mr. Pool's injuries as required by Tennessee Code Annotated section 50-6-204 (2015). Mr. Pool shall furnish medical bills relative to the authorized provider's treatment to Jarmon or its workers' compensation carrier.

2. This matter is re-set for an Initial (Scheduling) Hearing on March 1, 2016, at 2:45 p.m.

**ENTERED this the 13th day of January, 2016.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within twenty days of filing the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order on Remand was sent to the following recipients by the following methods of service on this the 13th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Ronald Pool, Self-represented | X | | X | ronaldleepool@aol.com |
| Duane Willis, Employer's Counsel | | | X | dwillis@morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

7