



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Ronald Pool | ) | Docket No. 2015-06-0510 |
| | ) | |
| v. | ) | State File No. 48782-2015 |
| | ) | |
| Jarmon D&Q Transport, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

_____

**Affirmed and Remanded - Filed February 18, 2016**

_____

In this second interlocutory appeal of this case, the employer appeals the trial court's decision requiring it to provide medical treatment for the employee's alleged occupational illness resulting from exposure to mold while working as a shuttle van driver. A prior order entered by the trial court directed that medical benefits be provided to the employee, but that order was vacated and the case remanded for consideration of the employer's notice defense in light of Tennessee Code Annotated section 50-6-305(a). Upon remand, the trial court determined that notice was timely and issued an order for medical benefits. The employer has appealed. We affirm the trial court's decision and remand the case.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Duane Willis, Nashville, Tennessee, for the employer-appellant, Jarmon D&Q Transport

Ronald Pool, Clarksville, Tennessee, employee-appellee, pro se

1

**Factual and Procedural Background**

This is the second interlocutory appeal of this case. We previously issued an opinion on January 4, 2016, containing the factual history of the case, which we adopt as set out below:

Ronald Pool ("Employee") is a forty-seven-year-old resident of Montgomery County, Tennessee, who began working as a shuttle van driver with Jarmon D&Q Transport ("Employer") in July 2014. For approximately five weeks from September 19, 2014 to October 25, 2014, Employee worked primarily for another company driving shuttle vans, but he also worked on weekends during this period for Employer. Thereafter, he returned to full-time work with Employer. He claims he began experiencing severe headaches and respiratory problems, including frequently recurring sinus infections, as a result of inhaling mold in the shuttle vehicles he operated for Employer.

In an affidavit filed in support of his Request for Expedited Hearing, Employee stated that at the end of 2014 and in January 2015, he began having upper respiratory symptoms "from mold in the vehicles at work." In February 2015, Employee was diagnosed with asthma and was prescribed inhalers by providers at the Tennessee Department of Health ("Health Department") in Clarksville where he was seen with a complaint of shortness of breath. At a subsequent visit to the Health Department on March 30, 2015, he complained of shortness of breath and a "sinus infection" for three weeks. On April 25, 2015, he sought emergency care at Gateway Medical Center ("Gateway") due to complaints of "chest pain [and] shortness of breath." The Gateway report states that the "[m]ost likely cause of his pain is pneumonia," and that he "does have cardiac risk factors and I cannot exclude a cardiac source for his pain." Employee testified that soon after his treatment at Gateway "my fears set in and I started my own investigation in private."

Employee testified that on June 25, 2015, he "sought help from my immediate supervisor Tim Hembree," telling him that he "required medical treatment with a workers' compensation doctor." According to Employee, "I brought to his attention evidence of mold in a petri tray and – in petri trays and results that I had from my investigation on the vehicle that I was hired to work in." Employer completed a First Report of Work Injury on the same date, which described how the "injury" occurred as follows: "[Employee] came to the supervisor with mold samples that he got from the vans that is causing [Employee] an allergic reaction to sinus area."

2

Employer provided a panel of physicians on June 25, 2015, and Employee was seen the following day by Dr. Giriprasadarao Korivi, whom Employee selected from the panel. The history of present illness in Dr. Korivi's June 26, 2015 report states that Employee "has had recurrent 'sinus problems' [and] sinus infections off and on," and notes that Employee "feels fine when he is not working." The report states that Employee "says it is an indoor air quality issue at work and is causing his allergies and repeated sinus infections." Employee was diagnosed at the June 26, 2015 visit with "[a]llergic rhinitis, cause unspecified." The assessment states "[w]orker in work-related accident," and includes an "allergy & immunology referral." Employee was released to work, but was instructed to "[a]void allergen exposure."

Employer offered a panel of allergists on July 2, 2015, from which Employee chose Dr. John Overholt. Before Employee could see Dr. Overholt, Employer denied the claim on July 7, 2015, stating in a letter to Employee that his claim was not compensable due to a "[l]ack of [i]njury as defined by [Tennessee Code Annotated] Section 50-6-301."

The trial court initially determined that Employee presented sufficient evidence from which the court concluded he was likely to prevail at a hearing on the merits regarding notice and ordered Employer to provide an evaluation by Dr. Overholt, the allergist Employee selected from the panel. On January 4, 2016, we vacated the trial court's decision and remanded the case for consideration of Employer's notice defense in light of Tennessee Code Annotated section 50-6-305, the statute that addresses notice in occupational disease cases. On remand, the trial court determined that no additional evidence was necessary, notice was timely provided, and that Employee was entitled to medical benefits. Employer has appealed.

**Standard of Review**

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;

3

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

**Analysis**

Employer maintains that Employee is not entitled to medical benefits because he (1) failed to provide timely notice of his purported occupational injury as required by Tennessee Code Annotated section 50-6-305(a), (2) did not meet his burden of proof at the expedited hearing, and (3) did not provide medical evidence of causation. The trial court found otherwise, concluding that Employee satisfied the notice requirement for reporting an occupational disease and had presented sufficient evidence to entitle him to medical benefits prior to trial. Based upon our review of the record, we find no error.

The controlling statute, Tennessee Code Annotated section 50-6-305(a), provides that "[w]ithin thirty (30) days after the first distinct manifestation of an occupational disease, the employee, or someone in the employee's behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury." The notice requirement exists so that an employer "will have the opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for the injured employee." *Jones v. Sterling Last Corp.*, 962 S.W.2d 469, 471 (Tenn. 1998). Consequently, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law." *Bogus v. Manpower Temp. Serv.*, 823 S.W.2d 544, 546 (Tenn. 1992).

The Tennessee Supreme Court has observed that, in occupational disease cases, "[t]he ideal rule . . . would postpone the running of the time [to give notice] until actual disability and a reasonably sufficient opportunity to discover the disease and its relation to the employment occur; in fact, that is the substance of the rule applied in many of the cases." *Christopher v. Consol. Coal Co.*, 440 S.W.2d 281, 284 (Tenn. 1969). Indeed, the Court has held that the time to provide notice to the employer starts to "run in [an] occupational disease case from the time the employee . . . knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation." *Id.* at 286. The rationale for the rule is that because an occupational disease "develops slowly and . . . full knowledge of it may exist long before a compensable disability develops[,] [i]t is injury from the disease, rather than the disease, which entitles an employee to compensation." *Adams v. Am. Zinc Co.*,

4

326 S.W.2d 425, 427 (Tenn. 1959). "It is for the same reason that our Courts hold that before the statute begins to run there must be knowledge upon the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent." *Id.*

The approach adopted by the Supreme Court decades ago has been followed in more recent occupational disease cases. For example, the Special Workers' Compensation Appeals Panel has observed that "[t]he 'first distinct manifestation' is when the employee knows or should know that the injury is an occupational disease." *Clifton v. Nissan N. Am.*, No. M2008-01640-WC-R3-WC, 2009 Tenn. LEXIS 507, at *12 (Tenn. Workers' Comp. Panel Aug. 18, 2009). Thus, "[a]ctual notice of the manifestation of an occupational disease is sufficient" to trigger the notice period. *Id.* This rule, adopted before the 2013 Workers' Compensation Reform Act, does not rely on a remedial interpretation of the law but, rather, on the common-sense notion that an employee must know or have reason to know that the workplace exposure resulted in an occupational illness before he or she can be expected to give notice of it.

In the present case, Employee asserts that he suffers from a work-related mold exposure resulting in an illness. Pursuant to section 50-6-305(a), he was required to report his condition within thirty days after the "first distinct manifestation." This requirement, as construed by the Supreme Court in *Christopher* and its progeny, required that Employee report his occupational illness when he knew or should have known that he had such a condition and that it was caused by workplace exposure(s). Employee apprised his supervisor on June 25, 2015, that his investigation revealed mold in the van he was assigned to drive and that he needed medical treatment from a "workers' compensation doctor." The next day, he was diagnosed by his authorized treating physician, Dr. Korivi, with "[a]llergic rhinitis, cause unspecified," though Dr. Korivi's assessment states "[w]orker in work-related accident." Before Employee could see an allergist based on Dr. Korivi's referral, Employer denied his claim. Under these circumstances, it is difficult to envision how Employer was prejudiced by Employee providing notice of his alleged injury on June 25, 2015. *See Crane Enamelware Co. v. Dotson*, 277 S.W. 902, 905 (Tenn. 1925) ("Even though notice is not given and the employer is without knowledge this will not bar a claim, as a rule, unless the employer has been prejudiced by lack of notice.").

Employer argues that, without a diagnosis of an occupational disease by a physician, there is no injury and, thus, no claim. However, once an employee has experienced a distinct manifestation of an occupational disease as discussed above, he or she has thirty days to report it under section 50-6-305(a). There is no prohibition against an employee reporting the employee's belief that he or she presently suffers from an occupational illness prior to an actual diagnosis from a physician. Employer cites no authority, and we are aware of none, that renders notice ineffective merely because it pre-dates a physician's formal diagnosis.

Employer also argues that the trial court erred in ordering medical benefits because the authorized physician, Dr. Korivi, noted in his assessment "allergic rhinitis, cause unspecified." However, Dr. Korivi's assessment also states "[w]orker in work-related accident," and includes an "allergy & immunology referral" for respiratory problems employee experiences "at work." He also instructed Employee to "[a]void allergen exposure." Further, as noted above, Employee's claim was denied before he could see an allergist pursuant to the referral made by Dr. Korivi, the authorized treating doctor.

At an expedited hearing where pre-trial benefits are at issue, an employee need not establish medical causation by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that he or she is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1). *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). While the evidence supporting the trial court's decision in this case can hardly be described as overwhelming, this alone is not a basis for us to substitute our judgment for that of the trial court merely because we might have chosen another alternative in the first instance. *See Neely v. Federated Rural Elec. Ins. Corp.*, No. 03S01-9410-CH-00099, 1995 Tenn. LEXIS 435, at *2 (Tenn. Workers' Comp. Panel Aug. 21, 1995). Instead, we are obligated to make our own determination regarding where the preponderance of the evidence lies and, having done so here, cannot at this stage of the case conclude that the trial court erred in ordering medical benefits.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

_____
Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

6

**FILED**

**February 18, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:50 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Ronald Pool | ) | Docket No. 2015-06-0510 |
| | ) | |
| v. | ) | |
| | ) | State File No. 48782-2015 |
| Jarmon D&Q Transport | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 18th day of February, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Ronald Pool** | | | | | X | ronaldleepool@aol.com |
| **Duane Willis** | | | | | X | dwillis@morganakins.com |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |



Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov