# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 14, 2012 Session

## CHARLIE M. GARDNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 97-D-2814    Cheryl Blackburn, Judge**

---

**No. M2011-01847-CCA-R3-CO - Filed March 5, 2013**

---

The Petitioner, Charlie M. Gardner, appeals from the summary dismissal of his petition for coram nobis relief. In 1999, the Petitioner was convicted of first degree murder and two counts of reckless aggravated assault for which he received an effective sentence of life without parole plus eight years. Eleven years later, he filed a petition for writ of error coram nobis alleging due process requires tolling the statute of limitations based upon an undisclosed "third party confession" and an "inconclusive T.B.I. report on ballistic evidence." Upon review, we affirm dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Patrick T. McNally, Nashville, Tennessee, for the Petitioner-Appellant, Charlie M. Gardner.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case involves the shooting death of a security guard at a night club in Davidson County in September 1997. The Petitioner's first trial ended in a hung jury, and his second trial resulted in a sentence of life without the possibility of parole plus eight years. His motion for new trial was denied. In his direct appeal, this Court affirmed the judgment of the trial court and provided a factual summary in our discussion of the sufficiency of the evidence:

> A rational jury could conclude from the evidence in this case that the
> Defendant sought to get even with the victim, Demetrius Laquan Wright, for

having hit him in an altercation at Club Yesterdays that resulted in the Defendant's being expelled from the club; that the Defendant returned to the club in the early hours of October 18, 1997, sought out the victim, who was distinctively dressed in a security guard's uniform shirt, and fired multiple shots into the crowded club; that the Defendant intentionally and with premeditation inflicted multiple gunshot wounds to Wright that caused his death; that the Defendant was positively identified as the person who fired the shots at Wright and as the person standing over the victim after the shooting.

State v. Charlie M. Gardner, No. M1999-02214-CCA-R3-CD, 2001 WL 306227, at *10 (Tenn. Crim. App., Mar. 30, 2001).  This Court also affirmed denial of the Petitioner's post-conviction petition alleging ineffective assistance of counsel, denial of right to testify, and error in jury instruction, Charlie M. Gardner v. State, No. M2003-01036-CCA-R3-PC, 2004 WL 840086 (Tenn. Crim. App. Apr. 16, 2004), perm. app. denied (Tenn. Sept. 13, 2004), and we affirmed the summary denial of his petition for writ of habeas corpus.  Charlie M. Gardner v. Parker, No. M2005-01924-CCA-R3-HC, 2006 WL 119635 (Tenn. Crim. App. Jan. 17, 2006), perm. app. denied (Tenn. May 30, 2006), cert. denied, 549 U.S. 1060 (2006).

On February 7, 2011, the Petitioner filed a pro se petition for writ of error coram nobis, arguing that due process required tolling the statute of limitations and that newly discovered exculpatory evidence "'may have resulted in a different judgment, had it been presented at trial.'"  He attached to his petition copies of five letters from the Office of the District Attorney General dating from October 2005 through June 2010, apparently in response to the Petitioner's requests for inspection of the public records regarding his case. The Petitioner asserts that upon receipt of his case file from the District Attorney's Office in August 2010, he discovered the following: a supplemental police report, an assistant district attorney's handwritten note referencing said report, and a Tennessee Bureau of Investigation "Official Firearms Identification Report."  The supplemental police report, written by Detective Juan Borges of the Nashville Metropolitan Police Department, reads in full:

On 10/18/97 a woman called the homicide office and stated that her friend went to visit her at her house.  While her friend was at her house she page[d] a man by the name of Roosevelt, Colbert[.] Mr. Colbert went to the house with another man by the name of Keith, Odum[.] Both are M/B.  The woman that called told me that while she was in her bedroom she overheard a conversation between the two subjects.  She stated that Roosevelt was telling Mr. Odum that when he heard people shooting he also started shooting his 45. caliber pistol and he wasn't for sure if he also shot the security guard.  Mr. Roosevelt also mention[ed] that he was still in possession of the 45. pistol.

Roosevelt owns a station wagon and Odum owns a gray Monte Carlo. After they made those comments they change[d] the conversation and left the house soon after.

The Petitioner attached to his petition the witness lists of the State and the Defense that were used at trial. Detective Juan Borges, the author of the above supplement, appears on the defense witness list but not on the State's. Mr. Colbert and Mr. Odum appear on the state's witness list but not on the defense's. The assistant district attorney's handwritten interoffice memo referencing the above memo states "see supplement where someone else admitted shooting their gun off in club." Finally, the T.B.I. "Official Firearms Identification Report" provides the results of bullet examinations and concludes that two bullets "were fired through the same barrel" and a third "could have been fired through the same barrel," but "due to the mutilated condition of [the third bullet], a more conclusive identification could not be determined." The Petitioner also attached to his petition a "Supplement Report" of Detective Hullett of the Metropolitan Police Department Homicide Unit which states that he "took all four projectiles to the Tennessee Crime Laboratory for examination."

The Petitioner also attached to his petition an affidavit of his trial defense attorney who stated that he could not recall "the Detective Borges memo" or "the firearms id report" from this case that "goes back thirteen years," but that he did not have the file, which was retrieved by the Petitioner's brother in 2008. Counsel concluded that "[w]ithin a reasonable degree of certainty I can state that neither the Borges memo nor the firearms report were contained in discovery; however, further review of the file . . . would be helpful."

By written order on July 27, 2011, the Davidson County Criminal Court dismissed the Petitioner's writ of error coram nobis and determined that it was untimely as well as failed to establish a cognizable claim. It is from this order that the Petitioner now appeals.

## ANALYSIS

On appeal, the Petitioner contends that the coram nobis court erred in summarily dismissing his petition for coram nobis relief. Under Tennessee law, a writ of error coram nobis is available to convicted defendants. T.C.A. § 40-26-105 (1997). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 16, 167 (Tenn. 1966)).

Relief by petition for writ of error coram nobis is governed by Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

T.C.A. § 40-26-105 (1997).

**I. Statute of Limitations.** In this case, the Petitioner acknowledges that he filed his writ seeking coram nobis relief beyond the one-year statute of limitations and argues that it should be tolled based upon principles of due process. Specifically, the Petitioner argues that his grounds for relief, the discovery of the police reports, the District Attorney's Case Preparation Evaluation, and the T.B.I. ballistics report, arose after the one-year limitation period had expired and were unavailable to him until August 2010. Moreover, the Petitioner asserts the coram nobis court erred in determining that strict application of the limitations period would deny him a reasonable opportunity to present his claim because it computed the period within which the Petitioner had to respond from the date of final judgment rather than from the date the Petitioner received the requested information. In response, the State contends that due process considerations do not require tolling of the statute of limitations for the Petitioner. [1]

---

[1] The record on appeal does not contain a response filed by the State in the coram nobis court; therefore, it appears the State did not properly raise the statute of limitations defense. However, the Petitioner raised the defense in his petition, arguing for "due process . . . tolling of . . . [the] statute of limitations." "Failure to raise the statute as an affirmative defense does not result in waiver 'if the opposing party is given fair notice of the defense and an opportunity to rebut it' because 'the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense.'" Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012) (quoting Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995)). We conclude that the Petitioner had fair notice of the defense and is not prejudiced by the State's failure to raise it. See id. ("Because Petitioner raised the issue of the statute of limitations by requesting that it be tolled on due process grounds, he cannot reasonably contend that he was prejudiced because he was not given fair notice of the defense or

(continued...)

The statute of limitations for a petition for writ of error coram nobis is one year from the date the judgment becomes final in the trial court. T.C.A. § 27-7-103 (1997); Mixon, 983 S.W.2d at 671. For purposes of a coram nobis petition, a judgment becomes final thirty days after the entry of the trial court's judgment if no post-trial motions are filed or upon entry of an order disposing of a timely post-trial motion. Mixon, 983 S.W.2d at 670 (citing Tenn. R. App. P. 4(c); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996)). "The State bears the burden of raising the bar of the statute of limitations as an affirmative defense." Harris v. State, 301 S.W.3d 141, 144 (Tenn. 2010) (citing Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003)). The issue of whether a claim is barred by an applicable statute of limitations is a question of law, which this court reviews de novo. Id. at 144 (citing Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)).

Additionally, "'[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness.'" Smith v. State, 357 S.W.3d 322, 355 (Tenn. 2011) (quoting Harris, 301 S.W.3d at 145). In order to determine whether due process concerns require a tolling of the statute of limitations, "a court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims." Harris, 301 S.W.3d at 145 (citing Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001)). In weighing these interests, courts should use the following test:

> (1) determine when the limitations period would normally have begun to run;
> (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and
> (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Id. (citing Sands, 903 S.W.2d at 301).

By written order, the coram nobis court applied the aforementioned test and stated:

> Applying the Harris factors to the present case, the limitations period would have begun to run 30 days after the entry of the order denying the petitioner's motion for new trial in September 1999. The filing of the petition for a writ of error coram nobis in 2011, over 11 years later is, therefore, untimely.

---

[1](...continued)
an opportunity to rebut it.").

The next step is to determine whether the grounds alleged in the coram nobis petition arose after the statute of limitations period expired, or in other words, whether the grounds were later-arising. Petitioner asserts that he received the reports at issue when he reviewed his case file in August 2010. Thus, the evidence offered by Petitioner and the grounds for relief resting thereon qualify as later-arising.

The final step in due process analysis requires the Court to determine whether the Petitioner was given a reasonable opportunity to present his claims. . . .

Here, the Petitioner asserts that his inability to receive copies of his court file from the DA's Office prevented him from presenting his coram nobis claims in a more timely [manner]. Petitioner indicated he received the documents in August 2010; however, he waited until February 2011 to file his petition, six months later. See Harris, 301 S.W.3d at 147 (finding that Harris was on notice that he should file his coram nobis claim at the time of his motion to reopen post-conviction proceeding, yet he waited an additional 25 months before filing the petition for writ of error coram nobis). Further, the exhibits to the petition show that Petitioner did not start seeking the DA's file until fall 2005 and Petitioner himself states in his petition that he had been trying to obtain his file "since the finality of his appellate review on November 27, 2006." (Petition for Writ of Error Coram Nobis, at 2). Petitioner is referring to his appeal on his petition for a writ of habeas corpus; [thus], it was not until every other avenue of relief had been exhausted that Petitioner filed his coram nobis claim. Accordingly, the Court concludes that [the] 11-year delay is unreasonable and that, as a matter of law, the petitioner is not entitled to due process tolling. See, e.g., Billy Ray Irick v. State, No. E2010-2385-CCA-R3-PD, 2011 WL 1991671 (Tenn. Crim. App., at Knoxville, May 23, 2011). Therefore, the petition is time-barred.

As an initial matter, it is undisputed that the Petitioner filed his writ for coram nobis relief outside the one-year statute of limitations period. In regard to whether the Petitioner's grounds for relief were "later-arising," the Petitioner contends, and the coram nobis court concluded, that his grounds for relief were later-arising because he discovered the documents in August 2010 when he received the file from the District Attorney's Office. The State counters that the Petitioner's grounds were not later-arising because both documents are dated before the Petitioner's trial and that even after the Petitioner received the requested information in 2010, the Petitioner waited six months to seek relief. The State further contends the police report is hearsay and would have been inadmissible at trial.

The Petitioner presents three pieces of evidence he alleges constitute newly discovered evidence forming the basis of his due process claim: the T.B.I. ballistics report, a supplemental police report, and an assistant district attorney's handwritten interoffice memo. In regard to the T.B.I. ballistics report, the Petitioner claims that it was exculpatory and would have raised serious reasonable doubt because "the State never produced a murder weapon . . . [and] said report is inconclusive in nature." Our opinion on the Petitioner's direct appeal details the testimony of Sergeant Hullet and Special Agent Don Carman. Sergeant Hullet testified that he took four bullets, entered into evidence as Exhibits 10, 13, and 14, to be examined by the Tennessee Bureau of Investigation ("TBI") Crime Laboratory. Special Agent Don Carman testified as an expert witness in forensic firearms identification or ballistics. Gardner, 2001 WL 306227, at *10. In our opinion, we specifically stated:

> Of the four bullets he examined, Agent Carman was able to determine conclusively that three of the bullets, the bullet found on the floor of the club, (Exhibit 10), and the two bullets taken from the body of the murder victim, (Exhibit 14), came from the same gun. The fourth bullet, (Exhibit 13), taken from victim Neal, was too mutilated to make a conclusive identification, although Agent Carmen determined that the fourth bullet had similar land and groove characteristics as the other three he examined.

Id.

Although the coram nobis court determined that the Petitioner's grounds for relief were in fact later arising, in its review of the merits of the coram nobis petition, it determined, based on the Petitioner's trial transcript, that Agent Carman had reduced his findings to a written report, that his report was admitted as Exhibit 12 during the trial, that Petitioner's trial attorney cross-examined Agent Carman as to the firearm findings set forth in Exhibit 12, and that Agent Carman testified as to the information contained in the firearm report. Because the T.B.I. ballistics report was clearly available to the Petitioner during trial, we conclude that it does not constitute newly discovered evidence. See Wlodarz v. State, 361 S.W.3d 490, 506 (Tenn. 2012) (applying coram nobis jurisprudence in guilty plea context and concluding that testimony at trial shows "the Petitioner was clearly aware that the ballistic evidence had been tested and that the results were inconclusive"); cf. Hutchison v. State, 118 S.W.3d 720, 732-33 (Tenn. Crim. App. 2003) (holding that trial court did not err in considering the merits of the later-arising post-conviction claim where the F.B.I. lab reports had not been offered as exhibits at trial, the parties now agreed they were exculpatory, and the State did not assert litigation of the "stale" issue would outweigh the co-defendant's due process right). Accordingly, the T.B.I. ballistics report was not a "later-arising" ground for relief.

In regard to the Petitioner's second claim, he relies upon the "'Case Preparation Evaluation' including a 'Nashville Metro Police Department Supplemental Report' written by Assistant D.A. Katy Miller and Detective Juan Borges, respectively." The "Case Preparation Evaluation" is a boiler-plate form with a handwritten note attached. The handwritten note was apparently written by assistant district attorney Katy Miller and provided at the bottom of the page "see supplement where someone else admitted to shooting their gun off in club." The supplement that she was referring to, the Nashville Metro Police Department Supplement Report, was a typewritten report by Detective Juan Borges of the Nashville Police Department. Detective Borges reported that he had received a phone call on October 18, 1997 from "a woman" who stated that she "overheard" a conversation between Roosevelt Colbert and Keith Odum. During the conversation, Colbert admitted to "shooting his .45 caliber pistol" and Colbert "wasn't sure if he also shot the [victim]."

In this case, we conclude that the Case Evaluation Report does not constitute grounds for relief because it was obviously attorney work product. See Wilson v. State, 367 S.W.3d 229, 235-36 (Tenn. 2012) (concluding that summary dismissal of coram nobis claim was proper because later arising evidence constituted attorney work product and therefore was not admissible). Whether the report by Detective Borges constitutes a later arising ground for relief presents a closer question. Defense counsel stated, through his affidavit, that he did not recall the report by Detective Borges, however, the record shows that Detective Borges was in fact named as a witness on the defense witness list for the Petitioner's trial. In addition, trial counsel noted that the case was thirteen-years old, that he had not reviewed the file, and that this information was "not something he would have overlooked." Based on this evidence, we conclude that the report by Detective Borges constitutes a later-arising ground for relief because the Petitioner did not receive the report by Detective Borges until August 2010.

This does not end our analysis. We must now determine whether a strict application of the limitations period would deny the Petitioner a reasonable opportunity to present his claim. In determining whether a strict application of the limitations period would deny the Petitioner a reasonable opportunity to present his claim, the Petitioner contends that the coram nobis court violated the precepts of Harris v. State, 301 S.W.3d 141, 147 (Tenn. 2010), by computing the time within which the Petitioner should have responded from the date of final judgment rather than from the date the Petitioner discovered the report by Detective Borges.

The Tennessee Supreme Court has declined to create a specific limitations period for determining whether a defendant has had a reasonable opportunity to present later-arising claims. See Harris, 301 S.W.3d at 147. In Harris, the Court clarified when delay in seeking coram nobis relief may be unreasonable as a matter of law and noted that each case must stand on its own facts. Id. In this case, the Petitioner contends that he has been "diligently

trying to obtain his entire case file . . . since the finality of his appellate review on November 27, 2006." However, the only proof of the Petitioner's efforts to obtain his file are five form letters from the District Attorney General outlining the process to review or copy his files. In the 2005 letter, the District Attorney General advised, among other things, that the Petitioner's "files [would] be available for sixty (60) days from the date of this letter. If arrangements to review the file are not made within that time, the file [would] be returned to archives." For reasons not borne out by the record, the Petitioner apparently continued to request his file, and the District Attorney General responded with essentially the same form letter in 2006, 2008, and 2010. On August 16, 2010, the Petitioner was provided with a receipt for $46 in exchange for having his file retrieved and copied. Accordingly, the record shows that the Petitioner was on notice of how to obtain his file from the District Attorney's Office as early as 2005. Yet, the Petitioner has failed to explain in any way his five-year-delay in obtaining his file from the District Attorney General.

Nevertheless, the Petitioner correctly asserts that, under Harris and the cases relied upon therein, Tennessee courts determining whether the Petitioner has had a reasonable opportunity to present a later-arising claim should begin their analysis from the date the petitioner received the late disclosed information. Here, the Petitioner filed his petition for coram nobis relief on February 7, 2011, six months after he received his file from the District Attorney General's Office. Under these circumstances, we cannot say that a six-month-delay is in and of itself unreasonable.

Next, the Petitioner contends that the coram nobis court applied an incorrect standard of review by considering whether the new evidence "would have" resulted in a different judgment instead of the statutorily mandated "may have" standard. The Petitioner also argues that the coram nobis court abused its discretion in relying upon several factual errors including (1) stating that the "Petitioner purports that he has found evidence in the form of a 'Case Preparation Evaluation' not prepared by Assistant District Attorney Katy Miller," (2) concluding that "[i]t appears Petitioner mischaracterized the Supplement Report," and (3) alleging that an eyewitness positively identified the Petitioner as the shooter. Here, the coram nobis court concluded, and we agree, that the Petitioner has failed to present a cognizable claim for relief.

"The decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court." State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Wilson, 367 S.W.3d at 235.

As an initial matter, the record reflects that the coram nobis court applied the appropriate standard of review and explicitly cited State v. Vasques, 221 S.W.3d 514 (Tenn. 2007) and Hart, 911 S.W.2d 371, in its order denying coram nobis relief. Although the coram nobis court later concluded "the evidence provided by Petitioner as exhibits to his petition would not have resulted in a different judgment in light of the evidence against him," this comment, in our view, does not evince an application of the wrong standard of review. Billy Ray Irick v. State, No. E2010-02385-CCA-R3-PD, 2011 WL 1991671, at *15 n.5 (Tenn. Crim. App. May 23, 2011).

Next, the Petitioner argues that the coram nobis court erroneously stated that "Katy" did not prepare the "Case Preparation Evaluation." Even if true, the Petitioner fails to explain the significance of who generated the "Case Preparation Evaluation." It is clear from the court's order that it understood the difference between the boiler-plate "Case Preparation Evaluation" form which was unsigned, and the attached handwritten note which was signed by assistant district attorney Katy Miller. In our view, the import of the handwritten note was its reference to the report by Detective Borges, not who prepared the forms. We interpret the Petitioner's second claim, that the court's conclusion that the Petitioner "mischaracterized" the supplement report, as a challenge to the court's conclusion and not a factual error. Here, we further observe that the Borges report did not identify the female caller and was therefore inadmissible hearsay. Wilson, 367 S.W.3d at 235 (quoting T.C.A. § 40-26-105(b)); Tenn. R. Evid., Rules 801, 802; Tenn. R. Civ. P. 26.02(3).[2] More importantly, the third party who allegedly confessed to shooting in the club on the night of the offense admitted to firing a ".45 caliber pistol", and the bullets recovered from the body of the victim were from a .38/.357 caliber weapon.[3]

Finally, the Petitioner contends that the coram nobis court erred by noting that there was an eyewitness who identified the Petitioner as the person who shot the victim. The Petitioner insists that there was no eyewitness to the shooting in our opinion in his direct appeal. This is simply incorrect. In the sufficiency of the evidence section of our opinion,

---

[2] See Wilson v. State, No. M2009-02241-CCA-R3-CO, 2011 WL 1344519, at *4 (Tenn. Crim. App. Apr. 6, 2011) (Welles, J., dissenting), *rev'd* 367 S.W.3d 229 (Tenn. 2012) ("Granting the Petitioner an evidentiary hearing based on the petition filed herein allows the Petitioner to go on a fishing expedition. In order for a petition for a writ of error coram nobis to merit an evidentiary hearing, the Petitioner must sufficiently allege in his petition that he has already caught the fish.").

[3] The facts as described in our direct appeal show that "[t]wo gunshots entered the back of the murder victim; one entered the leg of the aggravated assault victim in count three, Neal; and a spent bullet was found on the floor. Tests showed that the spent bullet found on the floor in the area of the murder and the two bullets taken from the murder victim's body came from the same handgun. Tests also showed that the bullet taken from Neal, although not conclusively from the same weapon, was not ruled out as having come from the same weapon." Gardner, 2001 WL 306227, at *11.

-10-

we clearly set forth the testimony of Ms. Tanisha Stewart, the sole eyewitness to the shooting. Gardner, 2001 WL 306227, at *9. As shots were fired, Ms. Stewart was "looking directly at [the Petitioner]." Id. She said the Petitioner was standing approximately ten feet away from her when the shots were fired. Ms. Stewart positively identified the Petitioner from a photographic lineup and at trial as the man she looked in the face and saw holding a gun pointed directly at the victim's back. Id.

The coram nobis court considered whether the alleged newly discovered evidence attached to the petition may have resulted in a different judgment at trial. The court denied relief in light of the evidence against the Petitioner at trial including the positive identification of the Petitioner as shooter by Ms. Stewart, firearm analysis, testimony about a previous altercation between the Petitioner and the deceased, and testimony regarding the Petitioner's threats to kill the deceased. The record supports the determination of the coram nobis court. Accordingly, the Petitioner has failed to show that the coram nobis court abused its discretion and is therefore not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the coram nobis court.

_____
CAMILLE R. McMULLEN, JUDGE