IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 26, 2014

## STEPHAN LAJUAN BEASLEY, SR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 264368      Don W. Poole, Judge**

_____

**No. E2013-00695-CCA-R3-CO - Filed June 2, 2014**

_____

The Petitioner, Stephan Lajuan Beasley, Sr., was convicted by a jury of first degree premeditated murder. On May 24, 2007, the Petitioner filed a *pro se* petition for writ of error coram nobis arguing that new evidence exists. Following a hearing, the coram nobis court denied the petition, and the Petitioner timely appealed. After a careful review of the record, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Donna Robinson Miller, Nashville, Tennessee (at continued hearing and on appeal) and Daniel J. Ripper, Chattanooga, Tennessee (at initial hearing), for the appellant, Stephan LaJuan Beasley, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Senior Counsel; William H. Cox, III, District Attorney General; and Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual & Procedural Background**

This case arises out of an altercation between the Petitioner and the victim, which resulted in the Petitioner's shooting the victim three times. As a result, the victim died. On October 20, 1994, the Petitioner was convicted of first degree premeditated murder and was

sentenced to life imprisonment without the possibility of parole. This Court affirmed on appeal the Petitioner's conviction. See State v. Stephen Lajuan Beasley, No. 03C01-9509-CR-00268, 1996 WL 591203, at *6 (Tenn. Crim. App. Oct. 10, 1996), perm. app. denied (Tenn. Apr. 27, 1998).[1] The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied. This Court also affirmed that decision on appeal. See Stephan Lajuan Beasley v. State, No. E2000-01336-CCA-R3-PC, 2001 WL 387385, at *3 (Tenn. Crim. App. Apr. 17, 2001), perm. app. denied (Tenn. Oct. 29, 2001). Since then, the Petitioner has filed numerous petitions for writ of habeas corpus, which have been denied or dismissed, and this Court has affirmed those judgments on appeal. See Stephen Lajuan Beasley, No. E2005-00367-CCA-MR3-HC, 2005 WL 3533265, at *4 (Tenn. Crim. App. Dec. 27, 2005), perm. app. denied (Tenn. May 30, 2006); Stephen L. Beasley v. State, No. W2011-01956-CCA-R3-HC, 2012 WL 2384051, at *5 (Tenn. Crim. App. June 25, 2012); Stephan L. Beasley v. State, No. E2012-02208-CCA-R3-HC, 2013 WL 5638299, at *4 (Tenn. Crim. App. Oct. 15, 2013); Stephan L. Beasley v. Avril Chapman, Warden, No. M2013-01380-CCA-R3-HC, 2014 WL 492343, at *1 (Tenn. Crim. App. Feb. 6, 2014).

The instant case stems from the Petitioner's petition for writ of error coram nobis, claiming that new evidence exists. Specifically, the Petitioner claims that the State's expert witness at trial, Dr. Harlan, had his medical license revoked based on numerous allegations of improper action with respect to many autopsies he performed. The Petitioner's coram nobis hearing was held on May 9, 2011, and was resumed and completed on November 29, 2012. At the May 9, 2011 hearing, Dr. Charles Warren Harlan testified that he lived in Tennessee from 1962 to 2006. In 1972, he graduated from the University of Tennessee Medical School and subsequently completed a residency program in anatomic and clinical pathology. Additionally, Dr. Harlan completed a one-year fellowship in forensic pathology, which, he explained, "incorporates all of the elements of anatomic and clinical pathology as well as adding certain specialized areas including terminal wound ballistics and applies all of that knowledge to the law."

In 1983, Dr. Harlan became an assistant professor of pathology at Vanderbilt University and Meharry Medical College. Additionally, Dr. Harlan worked as a county medical examiner for Davidson County. In 1989, Dr. Harlan became chief medical examiner for Davidson County. In 1993, however, Dr. Harlan resigned as chief medical examiner and became an assistant county medical examiner. He denied that this resignation was based on allegations of unprofessional conduct regarding autopsies but stated, rather, that it was based on allegations of harassment by other employees. In 1994, Dr. Harlan ceased his employment with the State of Tennessee and entered private practice for forensic autopsy.

---

[1] We note the inconsistencies in the spelling of the Petitioner's first name throughout his procedural history. We have spelled his name as written in each opinion of this Court.

He estimated that he contracted with approximately sixty-two counties during his time in private practice. As part of his job as a medical examiner, he had access to the Tennessee Bureau of Investigation ("TBI") Crime Laboratory, until that access was terminated in 1995. Dr. Harlan denied having knowledge of any specific reason that his access was denied.

Dr. Harlan acknowledged that his testimony in the Petitioner's trial was that he had conducted approximately 9,000 to 10,000 autopsies and confirmed that such a number would be a fair estimation. He further agreed that such an estimation would mean that he conducted approximately 450 to 500 autopsies per year. Dr. Harlan noted, however, that this number included autopsies he conducted while in medical school.

Dr. Harlan confirmed that his license to practice medicine in Tennessee was revoked in 2005 due to conduct that began in October 1994. He was aware that "part of the conduct that led to the State of Tennessee revoking [his] medical license had to do with autopsies." Dr. Harlan acknowledged that he had appeared to testify in other defendants' proceedings collaterally attacking their convictions.

Dr. Harlan denied "destroying organs related to an autopsy in any way other than in the normal course of routine for an autopsy." Additionally, he denied the allegation that there was a dog in the laboratory that "was allowed to devour . . . some organs related to an autopsy [he was] performing."

In October 1993, Dr. Harlan received from Hamilton County the victim's body related to the Petitioner's case. When he received the body in a blue bag, the body was unclothed. Dr. Harlan stated that he was not provided any information regarding the victim's clothing or jewelry. He was aware that, prior to his receipt of the body, the Hamilton County medical examiner had examined the body. Upon receipt of the body, he received the following information: "decedent found dead with neck wound. Apparent cutting, stabbing injury, homicide." Once he logged in the body, he opened the bag and examined and photographed it.

Dr. Harlan determined that the cause of death for the victim in this case was "a gunshot wound to the head which was included in multiple gunshot wounds." He recalled testifying at trial that "there appeared . . . to be areas where there was no blood on [the victim's] fingers." He continued, "[T]hose areas are areas that are a circle around the finger and the blood that is dried on there stops at the margin of that band of lighter colored skin and begins again on the other side of that band of lighter colored skin." Based on this "band" of skin, he made a medical inference that the victim "was wearing a ring of some sort" "at the time they were bleeding and . . . the blood got on the finger."

Regarding the victim's neck wound, Dr. Harlan confirmed that his report described this wound as "not lethal" and "superficial." He agreed that a sharper blade would not require as much pressure to create the wound. Additionally, he agreed that, because the cut did not harm "any vital structure" in the neck, the cut could have been no deeper than one-quarter to one-half of an inch. Dr. Harlan confirmed that this wound did not contribute to the victim's cause of death. When presented with a picture of the victim, he noted that the picture depicted the victim before he had received the body for examination.

No testimony was presented at the November 29, 2012 hearing.[2] Following arguments by both sides, the coram nobis court took the matter under advisement and issued a written ruling on February 20, 2013, denying relief. In its order denying relief, the coram nobis court noted that the Petitioner failed to provide any evidence establishing the date he discovered that Dr. Harlan's medical license had been revoked. Nevertheless, the coram nobis court determined on the merits that the Petitioner had failed to establish that Dr. Harlan committed violations of professional standards in the Petitioner's case. The Petitioner timely appealed the coram nobis court's judgment.

## Analysis

A writ of error coram nobis is statutorily available to a defendant convicted in a criminal prosecution. See Tenn. Code Ann. § 40-26-105(a) (2006). The statute provides that:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Id.

"The writ of error coram nobis is an extraordinary remedy known more for its denial than its approval." State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). The remedy is designed to fill "only a slight gap into which few cases fall." Id. at 672. Before granting relief, the trial court must be "reasonably well satisfied" with the veracity of the newly

---

[2] The record indicates that on September 22, 2011, the coram nobis court entered an order substituting the Petitioner's counsel. Thus, at the continued hearing on November 29, 2012, the Petitioner was represented by his newly appointed counsel.

discovered evidence and determine that the defendant is "without fault" in timely discovering such evidence. State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). The trial court must then review the evidence presented at trial and at the coram nobis proceeding and determine "whether a reasonable basis exists for concluding that had the [new] evidence been presented at trial, the result of the proceedings might have been different." Id.

The decision whether to grant or deny a petition for writ of error coram nobis lies within the discretionary authority of the trial court. Id. at 527-28. Consequently, we review such a decision for an abuse of discretion. State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008) (citing Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth., 249 S.W.3d 346, 358 (Tenn. 2008)).

The State argues on appeal that the statute of limitations bars consideration of the Petitioner's claim. "Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo." Harris v. State, 301 S.W.3d 141, 145 (Tenn. 2010) (citing Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Id.

A petition for a writ of error coram nobis must be filed within one year of the underlying judgment becoming final. See Tenn. Code Ann. §§ 27-7-103 (2000); 40-26-105(a). This time period begins "either thirty days after [the judgment's] entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." Harris, 301 S.W.3d at 144 (citing Mixon, 983 S.W.2d at 670). "We construe the coram nobis statute of limitations consistent with the longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." Id. (citing Mixon, 983 S.W.2d at 670). The burden is on the State to raise the statute of limitations bar as an affirmative defense. Id.[3]

The State did not raise the statute of limitations bar as an affirmative defense until this case was on appeal. However, the Petitioner argued in his petition that due process principles tolled the applicable statute of limitations in this case. Our supreme court has held that, when the Petitioner requests tolling of the statute of limitations in his original petition,

---

[3] But see Harris, 301 S.W.3d at 153 n.17 (Koch, J., concurring) (disagreeing that the statute of limitations is an affirmative defense in error coram nobis proceedings).

the statute of limitations issue is not waived by the State's failure to raise the issue as an affirmative defense. See Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012) ("Because Petitioner raised the issue of the statute of limitations by requesting that it be tolled on due process grounds, he cannot reasonably contend that he was prejudiced because he was not given fair notice of the defense or an opportunity to rebut it."). Thus, we will address the issue of whether the statute of limitations bars the Petitioner from consideration of his claim.

The one-year limitations period in this matter expired in 1996. However, in certain coram nobis claims "based on newly discovered evidence of actual innocence," a tolling of the statute of limitations may be required on due process grounds. Id. (citing Workman v. State, 41 S.W.3d 100, 101 (Tenn. 2001)). Put another way, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992).

To determine whether a claim for relief requires tolling of the statute of limitations, a court should conduct the following inquiry:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995).

Looking at the first step in the analysis, we note that the Petitioner's motion for new trial was denied on May 17, 1995. Accordingly, the one-year statute of limitations began to run on May 17, 1995, and expired one year later in May 1996.

Therefore, we must consider the second step in the inquiry – whether the Petitioner's grounds for relief "actually arose after the limitations period would normally have commenced." See Sands, 903 S.W.2d at 301. The Petitioner's purported "newly discovered evidence" in this case is the fact that the State's expert witness, Dr. Harlan, had his medical license revoked based on numerous allegations of improper action with respect to many autopsies he performed. According to the order entered by the State of Tennessee Department of Health, which the Petitioner entered as an exhibit at the hearing, Dr. Harlan's

medical license was revoked on May 3, 2005. Thus, this ground for relief arose approximately ten years after the limitations period began to run.

Given that the evidence of Dr. Harlan's medical license being revoked is "later-arising,"[4] we must determine whether "a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim." Id. In conducting this inquiry, our supreme court has declined to set a specific limitations period or "an outer limit of reasonableness" for "later-arising" claims. Harris, 301 S.W.3d at 146. In Harris, however, the supreme court determined that delays of six years and twenty-one months, respectively, after the appellant claimed to have discovered the new evidence were unreasonable and not entitled to due process tolling. Id. We note that, in this case, Dr. Harlan's medical license was revoked on May 4, 2005. However, as the coram nobis court noted, the Petitioner has failed to provide any evidence establishing when he discovered that Dr. Harlan's medical license had been revoked. See Charlie M. Gardner v. State, No. M2011-01847-CCA-R3-CO, 2013 WL 794026, at *7 (Tenn. Crim. App. Mar. 5, 2013), perm. app. denied (Tenn. Aug. 14, 2013) (recognizing that, in analyzing a due process tolling claim in a coram nobis proceeding, a court should begin its analysis "from the date the petitioner received the late disclosed information"). Accordingly, the Petitioner has failed to establish that the statute of limitations should be tolled on due process grounds.

Moreover, looking to the merits of the Petitioner's claim, this Court has stated in a prior case that "the revocation of Dr. Harlan's medical license and the Board's findings [did not] constitute 'new evidence' as contemplated by the [coram nobis] statute." Phyllis Ann. McBride v. State, No. M2009-01467-CCA-R3-PC, 2010 WL 2134157, at *4 (Tenn. Crim. App. May 27, 2010), perm. app. denied (Tenn. Nov. 15, 2010). Therefore, even if we were to toll the statute of limitations, relief would not be proper because evidence of Dr. Harlan's medical license being revoked for reasons unrelated to this particular case does not constitute "new evidence." Accordingly, the Petitioner is entitled to no relief.

---

[4] See Harris, 301 S.W.3d at 153 (Koch, J., concurring) (defining "later-arising" grounds for relief as those "that arose after the point in time when the applicable statute of limitations normally would have started to run") (citing Sample v. State, 82 S.W.3d 267, 272 (Tenn. 2002); Sands, 903 S.W.2d at 301; Burford, 845 S.W.2d at 205).

## CONCLUSION

The Petitioner has failed to establish that he is entitled to have the coram nobis one-year statute of limitations period tolled on due process grounds.  Therefore, we affirm the judgment of the coram nobis court denying relief.

_____
JEFFREY S. BIVINS, JUDGE