FILED

July 13, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:06 PM



# COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| Sarah Kaye McIntosh, | ) | Docket No.: 2015-08-0106 |
| Employee, | ) | |
| v. | ) | State File No.: 24706-2015 |
| | ) | |
| Randstad, | ) | Date of Injury: March 23, 2015 |
| Employer, | ) | |
| And | ) | Judge: Jim Umsted |
| | ) | |
| ESIS, | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on June 18, 2015, upon the Request for Expedited Hearing filed by Sarah Kaye McIntosh (Ms. McIntosh), the Employee, on June 4, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if Randstad, the Employer, is obligated to provide medical and/or temporary disability benefits, as well as discovery. The parties resolved the request for discovery informally before the Expedited Hearing.

The undersigned Workers' Compensation Judge conducted an in person Expedited Hearing on June 18, 2015. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. McIntosh would likely prevail at a hearing on the merits and is entitled to further medical and temporary disability benefits.

## ANALYSIS

### Issue

*Whether Ms. McIntosh has demonstrated that she would likely prevail at a hearing on the merits so as to entitle her to further medical or temporary disability benefits.*

1

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Medical Records of Baptist Minor Medical Center
2. Panel of Physicians (Form C-42)
3. Wage Statement
4. Summary (by insurance adjuster) of Ms. McIntosh's statement
5. Workers' Compensation Claim Questionnaire
6. Transcribed statement of Ms. McIntosh
7. Notice of Denial Letter (from ESIS, dated April 9, 2015)
8. Text message from Ms. McIntosh to Randstad, notice of injury
9. Emails between Ms. McIntosh and Layanna Willis (Randstad manager)
10. Email from Layanna Willis at Randstad to Ms. McIntosh that work assignment ended
11. Affidavit of Ms. McIntosh.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), filed April 16, 2015
- Dispute Certification Notice (DCN), filed May 28, 2015
- Request for Expedited Hearing, filed Jun 4, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

Ms. McIntosh provided in-person testimony.

**History of Claim**

Randstad is a staffing agency that employed Ms. McIntosh on February 6, 2013, as an insurance specialist at Accredo, a pharmacy management company. Beginning March 23, 2015, work was slow and Accredo assigned Ms. McIntosh and two other workers a project of organizing a large number of old insurance files. Between March 23, 2015, and March 30, 2015, Ms. McIntosh worked an eight-hour work day re-filing thousands of pieces of paper into new files. After a few days, her hands became painful and numb. She attempted to self-treat and on March 27, 2015, went to Walgreens and purchased two wrist braces. Her condition did not improve and on March 30, 2015, she gave email notice of her work injury to Layanna Willis, her manager at Randstad.

Randstad provided a panel of physicians, and on March 31, 2015, Ms. McIntosh selected Baptist Minor Medical Center (BMMC) as her authorized physician. Ms. McIntosh treated on one occasion at BMMC on April 1, 2015. She reported a history that "we had special project of filing thousands of files, my hands became sore, then numb

2

and very painful." Her diagnosis was "acute carpal tunnel syndrome both hands/wrist[s]." BMMC referred Ms. McIntosh to an "orthopedic doctor" for further treatment. BMMC assigned "transitional duty" work restrictions with limited use of both hands, including limitations on repetitive movement, pushing/pulling, reaching/grasping, and lifting. BMMC instructed Ms. McIntosh to wear her splint at all times.

Ms. McIntosh returned to work on a light duty status at Randstad, where she worked until April 10, 2015. Randstad did not accommodate her work restrictions after that date. Ms. McIntosh has not worked since April 10, 2015 due to her hand and wrist condition. On April 24, 2015, Layana Willis at Randstad sent an email to Ms. McIntosh telling her that she would need "an approval from a doctor to return back to work." On May 1, 2015, Layanna Willis at Randstad sent another email to Ms. McIntosh notifying her that "the assignment with Accredo has been ended due to lack of work. Please don't return to work."

On April 8, 2015, Glenn Parker, the insurance adjuster for ESIS, Randstad's workers' compensation insurance carrier, obtained a recorded statement from Ms. McIntosh. She described her work injury claim and also noted, "Over the past year I've noticed that my hands get numb every now and then, but I'm able to usually massage . . . my forearms and it comes right back and then I'm fine. It's never been a whole lot and it's never been lengthy and it's never been painful." During the Expedited Hearing, Ms. McIntosh testified that any prior tingling in her wrists was minor and would go away, and that it was nothing like the pain she is now encountering. She also testified that she participates in no hobbies or non-work activities that contribute to the painful condition of her hands.

On April 9, 2014, ESIS sent a letter to Ms. McIntosh denying her claim because "there is no medical evidence that your present complaints are work related." Randstad submitted a Form C-41 Wage Statement for the fifty-two (52) week period prior to the alleged injury. According to Ms. McIntosh, weeks 24, 41, 42, 51 and 52 of form C-41 should not be included because she was sick during those weeks resulting in lower than normal pay. Eliminating those five (5) weeks results in total earnings of $25,072.06 for forty-seven (47) weeks, with an average weekly wage (AWW) of $533.45, and a weekly compensation rate (CR) of $355.63.

## Ms. McIntosh's Contentions

Ms. McIntosh contends her carpal tunnel condition is a compensable, work-related injury. She is requesting that she be given a panel of orthopedic physicians for treatment. She has not worked since April 10, 2015, and remains unable to work because of her injury. She requests an award of temporary disability benefits.

## Randstad's Contentions

Randstad contends the claim is not compensable because there is no medical

3

opinion that Ms. McIntosh's injury arose "primarily out of and in the course and scope of employment" as required by Tennessee Code Annotated section 50-6-102(12). Randstad submits that it is not plausible that filing folders for a few days could have caused more than fifty percent (50%) of the alleged carpal tunnel condition.

Randstad further contends that pursuant to Tennessee Code Annotated section 50-6-305(a), an employee must give notice of an occupational disease within thirty days of its manifestation. Randstad submits that Ms. McIntosh admitted in her recorded statement that she had occasional numbness in her hands over the past year, and she failed to give notice of this condition to her employer.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### *Factual Findings*

Between March 23, 2015, and March 30, 2015, Ms. McIntosh began experiencing pain and numbness in both hands while filing thousands of pages of documents at work. She gave notice of her condition to Randstad on March 30, 2015. She experienced some minor numbness in her hands during the previous year, but it immediately resolved and was much less severe than her current pain and numbness. Ms. McIntosh participates in no hobbies or non-work activities that contribute to the painful condition of her hands. Randstad approved treatment at BMMC on one occasion before denying her claim. On April 1, 2015, BMMC made a preliminary diagnosis of acute carpal tunnel syndrome and referred Ms. McIntosh to an orthopedic physician. Randstad refused to authorize a referral to an orthopedist. BMMC assigned light duty work restrictions that Randstad accommodated until April 10, 2015. Because of her injury and medical restrictions, Ms. McIntosh has been unable to work since April 10, 2015.

4

*Arising Primarily Out of and in the Course and Scope of Employment*

For injuries on or after July 1, 2014, an employee must show that her injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2014). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than fifty percent (50%) considering all causes. Tenn. Code Ann. § 50-6-102(13)(B)(2014). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(13)(D)(2014). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1)(2014); *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9.

In the present case, Randstad asserts that there is insufficient evidence that Ms. McIntosh's alleged injury arose primarily out of or within the course and scope of her employment. Instead, Randstad asserts, "it seems implausible that filing folders for a couple of days could have caused more than 50% the alleged carpal tunnel." However, Randstad submitted no evidence to support this contention. To the contrary, Ms. McIntosh testified that she had not previously experienced hand pain and numbness this severe, and that the pain and numbness began during a one-week period at work when she was required to re-file thousands of pages of documents. This is essentially the same history that she reported to BMMC. The records of BMMC report a diagnosis of "acute carpal tunnel syndrome both hands/wrists" and report no other causative factors than the work-related history supplied by Ms. McIntosh.

Tennessee law has long held that medical testimony is not to be "read and evaluated in a vacuum." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Instead, the medical proof "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Id.* The Court finds nothing in either the current definition of injury or in the fact that the "medical testimony" is found in a stipulated document rather than a formal deposition to supplant this basic principle. Instead, this Court is constrained to evaluate all the evidence, both lay and expert, at this interlocutory stage of the proceedings to determine if Ms. McIntosh is likely to succeed on the merits at a hearing. In so doing, the Court not only has considered the lack of evidence supporting Randstad's position that causation is "implausible," but also the medical records and the lay testimony of Ms. McIntosh.

The Court finds Ms. McIntosh to be credible. She presented herself respectfully, competently, and without hesitation. Her description of injury during her live testimony matches her statements given to Randstad, as well as her history reported at BMMC, and

the record as a whole. In its totality, the evidence to date is sufficient for this Court to conclude that Ms. McIntosh would likely prevail at a hearing on the merits regarding the issues of further medical care and temporary disability.

*Defense of Lack of Notice of Occupational Disease*

Tennessee Code Annotated section 50-6-102(13)(2014) provides that "injury" includes "occupational disease" arising primarily out of and in the course and scope of employment. Tennessee Code Annotated section 50-6-305(a)(2014) provides that "within thirty (30) days after the first distinct manifestation of an occupational disease, the employee, or someone in the employee's behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury." Randstad contends that Ms. McIntosh's admission in her recorded statement that she had occasional numbness in her hands over the past year, and that she failed to give notice of this condition to her employer, is a valid defense to this claim. Tennessee law, however, has held that running of the time for giving of notice of occupational disease should be postponed until there is an actual disability and a reasonably sufficient opportunity to discover the disease and its relationship to the employment. *Christopher v. Consolidation Coal Co.*, 222 Tenn. 727, 440 S.W.2d 281 (Tenn. 1970). The Court finds that until the one (1) week work period beginning March 23, 2015, there was no "distinct manifestation" of an occupational disease and there was no duty to report the earlier minor numbness to Randstad. Therefore, Randstad's notice defense must fail.

*Medical benefits*

Having found Ms. McIntosh has presented sufficient evidence to conclude she would likely prevail on the merits, the Court turns to the benefits requested. Tennessee Code Annotated section 50-6-204(a)(1)(A)(2014) provides that the employer shall furnish, free of charge to the employee, such medical treatment as ordered by the attending physician and made reasonably necessary by the work injury.

Randstad initially accepted the claim. It provided a panel of physicians and allowed Ms. McIntosh to see a physician at BMMC on one occasion. The doctor diagnosed "acute carpal tunnel syndrome." A careful examination of the medical report reveals that, while it contained no specific causation statement, it did contain multiple notations that the condition began at work after filing thousands of files. There was no notation of any other causative factor in the medical report. BMMC referred Ms. McIntosh to an orthopedic specialist. Randstad did not request a more definitive causation opinion from BMMC, but denied the claim on the basis "there is no medical evidence that your present complaints are work related." However, there is no evidence in the record of any other causative factor. The Court finds that Ms. McIntosh has established a prima facie claim for carpal tunnel syndrome, and that she is entitled to a panel of orthopedic specialists as recommended by BMMC.

6

Tennessee Code Annotated section 50-6-207(2)(2014) provides for awards of temporary partial disability (TPD) during the time period during which the injured employee is able to resume some gainful employment in a disabled condition, but has not reached maximum recovery. The compensation rate for temporary partial disability is 66 2/3% of the difference between the average weekly wage of the worker at the time of the injury and the wage that the worker is able to earn in her partially disabled condition. *Id.*

The Court has already determined that Ms. McIntosh is likely to prevail at a hearing on the merits as to a causal connection between her disability and her employment under the applicable standard at this Expedited Hearing stage. This Court finds Ms. McIntosh also has demonstrated the likelihood of prevailing at a hearing on the merits as to an inability to work within her restrictions from BMMC. The restrictions, as of the single visit on April 1, 2015, remain in effect. Randstad accommodated these restrictions until April 10, 2015. Randstad owes TPD benefits following that date. Here, the average weekly wage is $533.45 and Ms. McIntosh is not, due to her restrictions, able to earn a wage. Therefore, her TPD rate is two-thirds (2/3) of $533.45 or $355.63. She is entitled to TPD from April 11, 2015, until the date of this Order. She is also entitled to ongoing TPD until she is released without restrictions, is able to resume gainful employment at a job earning the same or better wage she received prior to her injury, or until placed at Maximum Medical Improvement.

**IT IS, THEREFORE, ORDERED** as follows:

1. Randstad shall provide a panel of orthopedic surgeons compliant with Tennessee Code Annotated section 50-6-204(a)(3)(2014) for evaluation and/or treatment of the injury of March 23, 2015.

2. Randstad shall, subject to the provisions of Tennessee Code Annotated section 50-6-207(2)(2014), pay to Ms. McIntosh TPD benefits at the weekly rate of $355.63 for the period of April 10, 2015, to the date of this order, a period of thirteen (13) weeks and two (2) days, or $4,724.80. Randstad shall continue TPD payments to Ms. McIntosh until she is either placed at MMI or able to work at a job enabling her to earn a wage equal to or better than that earned at the time of injury.

3. This matter is set for Initial Hearing on September 16, 2015, at 1:00 PM Central Time.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the**

7

**necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 13th day of July, 2015.**

**Jim Umsted, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Jim Umsted, Court of Workers Compensation Claims. You must dial in at 866-943-0014 toll free to participate in your scheduled conference.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10)

calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of July, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Sarah McIntosh | | | | | X | justkaye44@aol.com |
| Ormand Deallaume, Esq. | | | | | X | odeallaume@bakerdonelson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

9