**FILED**

**October 16, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 4:30 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **JOHN MATTHEW SKINNER,** | ) | **Docket No.: 2016-03-1322** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MARION ENVIRONMENTAL, INC.,** | ) | **State File No.: 94447-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **GREENWICH INSURANCE CO.,** | ) | **Judge Pamela B. Johnson** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS
### (Decision on the Record)

This matter came before the undersigned Workers' Compensation Judge for an Expedited Hearing. John Matthew Skinner filed a Request for Expedited Hearing on July 24, 2017, seeking a decision on the record instead of convening an evidentiary hearing. Marion Environmental, Inc. filed its response on August 18, 2017, but did not request an evidentiary hearing. The Court issued a Docketing Notice on August 24, 2017, listing the documents filed. The Court gave the parties until September 5, 2017, to file position statements and any objection to the admissibility of the listed documents. Marion filed Objections to Admissibility on September 5, 2017, and, with leave of Court, Mr. Skinner filed his response to the admissibility objections on September 26, 2017.

Upon careful consideration of the record, this Court finds it needs no additional information to determine whether Mr. Skinner is likely to prevail at a hearing on the merits of the claim. Therefore, under Tennessee Code Annotated section 50-6-239(d)(2) (2016) and Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2016), the Court decides this matter upon a review of the written materials.

The central legal issue is whether Mr. Skinner is likely to prevail at a hearing on the merits regarding entitlement to medical and temporary total disability benefits, and attorney's fees. For the reasons set forth below, the Court holds Mr. Skinner came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the

1

merits that he provided proper notice of his injury and entitled to a panel of physicians. This Court concludes Mr. Skinner is not entitled to any of the other requested benefits at this time.

## History of Claim

A review of the written materials revealed the following facts.[1] Mr. Skinner worked for Marion as an Emergency Manager/ Incident Commander/ Hazmat Response Technician and the Knoxville Branch Manager for approximately ten years. During his employment, his work projects exposed him to many hazardous and toxic materials, including but not limited to: molds, heavy metals, petroleum-based substances, fungal contamination, and other chemical and biological materials. He alleged exposure to fungal contamination, through investigations and remediations, on more than 200 occasions from mid-2011 through June 2016.

Marion disputed Mr. Skinner's alleged exposures. Ellen Gallant, owner and president of Marion, contended 95% of Mr. Skinner's job did not involve mold or toxic waste but most often involved analytical and administrative functions. Ms. Gallant stated that when Mr. Skinner's work involved mold or toxic waste, the appropriate personal protective equipment (PPE) and safety protocols protected him. Drake Taylor, a Marion employee whom Mr. Skinner supervised, stated Mr. Skinner always used the proper PPE when working on a job site. Ms. Gallant and Mr. Taylor also indicated Mr. Skinner purchased a home in 2011 with extensive black mold in the basement, which he remediated himself.[2] Mr. Taylor additionally stated Mr. Skinner built a living space in the basement of the home where he currently resides while his son lives in the upper level of the home.

Mr. Skinner alleged he was reasonably healthy with only sinus issues becoming problematic in the last three to five years. In March 2014, he experienced an unexplainable pulmonary embolism, which caused scarring in his lungs and pulmonary hypertension. On May 1, 2016, he was Project Manager over the remediation of a 1,000-person homeless camp. The project lasted two weeks and required the removal by hand of personal belongings and debris, including water-soaked clothing, bedding, trash, hypodermic needles, and other waste. He suffered problems with sinus drainage, inability to focus, memory, disconnection, and balance through December 2016.

---

[1]Marion raised objections to the admissibility of several documents that Mr. Skinner submitted. The Court considered those objections and Mr. Skinner's responses and ruled on each in the attached Appendix.

[2]Thomas B. Lasley confirmed Ms. Gallant's and Mr. Taylor's statements that Mr. Skinner remediated a home with extensive black mold.

In late November or early December 2016, Mr. Skinner notified Ms. Gallant[3] that he experienced ongoing health problems and requested a panel of physicians to evaluate his health problems. Mr. Skinner claimed his chronic sinus problems resulted in debilitating gagging and vomiting of clear mucus, sores in his naval cavity and on his neck and ears, nosebleeds, nausea, fatigue, and sensitivity to environmental changes. Marion denied the request due to lack of substantiation of illness and exposure.

The parties offered contrasting explanations regarding the basis of Mr. Skinner's separation from Marion. Mr. Skinner reported to his medical providers that he retired June 1, 2016, due to his health problems. Marion representatives indicated it terminated Mr. Skinner on June 23, 2016, due to intoxication on a job site and possible driving of the company vehicle while under the influence. Marion offered an optional alcohol rehabilitation program for potential rehire; Mr. Skinner declined.

Mr. Skinner filed his Petition for Benefit Determination (PBD) on December 8, 2016, and, during the mediation process, Marion purportedly offered Mr. Skinner a panel of physicians for evaluation of his condition. He declined to select a physician.

Mr. Skinner sought medical treatment on his own from Dr. John L. Wilson, Jr. at Great Smokies Medical Center (GSMC) on January 4, 2017. Mr. Skinner reported a twenty-five-year history of hazmat remediation and specifically noted his recent homeless-camp-cleanup project "seemed to be the tipping point in his health." Dr. Wilson concluded that Mr. Skinner developed chronic inflammatory response syndrome (CIRS). Additionally, Dr. Wilson found that Mr. Skinner's exposure to numerous and varied toxins including mold and mycotoxins over the course of years of hazmat work was the most likely cause of his CIRS. Dr. Wilson charged Mr. Skinner $5,773.95 from January 4, 2017, through June 12, 2017 for his services.[4]

Dr. Wilson referred him to Dr. Cynthia Libert, a GSMC colleague, for additional testing. Dr. Libert treated Mr. Skinner for epistaxis, contact with, and (suspected) exposure to mold (toxic), postnasal drip, and unspecified chronic sinusitis. Dr. Libert noted a history of occupational exposure to toxic mold and stated she suspected the mold exposure contributed to the development of both Mr. Skinner's chronic sinus problems and current medical problems. Dr. Libert referred him to Dr. R.J. Oenbrink, a physician trained and certified in treatment of CIRS, for further evaluation and management.

---

[3]In his PBD, Mr. Skinner noted he reported the injury to Ms. Gallant on November 30, 2016. In his Affidavit, Mr. Skinner stated he reported his ongoing health problem to Ms. Gallant on December 5, 2016. The First Report of Work Injury noted Mr. Skinner notified Marion on November 30, 2016.

[4]Mr. Skinner's charges included expenses for office visits, testing, telephone evaluations, special letters, and copies.

3

Mr. Skinner first saw Dr. Oenbrink on April 13, 2017. Dr. Oenbrink diagnosed a myriad of conditions and noted the word "maybe" in the section of his report pertaining to CIRS. However, in follow-up visits, Dr. Oenbrink diagnosed CIRS. In his response to a questionnaire from Mr. Skinner's attorney, Dr. Oenbrink indicated Mr. Skinner's CIRS was a natural incident of his work at Marion due to exposure to toxic mold substances. Dr. Oenbrink further indicated that it is very unlikely that Mr. Skinner's illnesses originated from a hazard to which he was equally exposed outside of his employment. Stated another way, Dr. Oenbrink said Mr. Skinner's illnesses were incidental to the character of his employment as a mold specialist at Marion and not independent of his employment relationship.[5]

Marion introduced Dr. Oenbrink's disciplinary record from the North Carolina Medical Board (NCMB). On September 12, 2014, the NCMB indefinitely suspended his medical license for unprofessional conduct and making of false statements. The NCMB stayed the suspension on Dr. Oenbrink's satisfaction of certain conditions including physical presence of a chaperone for all patient encounters and utilization of a practice mentor.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Skinner need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1).

### *Notice*

The Workers' Compensation Law provides that "[w]ithin thirty (30) days after the first distinct manifestation of an occupational disease, the employee . . . shall give written notice thereof to the employer[.]" Tenn. Code Ann. § 50-6-305(a). The notice requirement exists so that an employer "will have the opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for the injured employee." *Pool v. Jarmon D&Q Transp.*, 2016 TN Wrk. Comp. App. Bd. 9, at *7-8 (Feb. 18, 2016). Thus, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to

---

[5]The medical records indicated Mr. Skinner and Dr. Oenbrink exchanged numerous emails discussing both Mr. Skinner's medical status and their personal lives. In an email to Mr. Skinner, Dr. Oenbrink commented, "So many folks getting screwed by attorneys, insurers, no way out after paying premiums for prolonged periods of time, essentially receiving a death sentence that involves prolonged suffering and debility."

4

recover compensation under the workers' compensation law. *Id.* The Tennessee Supreme Court noted the time to provide notice to the employer starts to "run in [an] occupational disease case from the time the employee . . . knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation." *Christopher v. Consol. Coal Co.*, 440 S.W.2d 281, 286 (Tenn. 1969). "It is for the same reason that our Courts hold that before the statute begins to run there must be knowledge upon the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent." *Adams v. Am. Zinc Co.*, 326 S.W.2d 425, 427 (Tenn. 1959).

In *Pool,* the Appeals Board considered the notice requirement in a similar mold exposure case resulting in illness. The Appeals Board stated the employee was required to report his occupational illness when he knew or should have known that he had such a condition and that it was caused by workplace exposures. The Appeals Board also noted an employee may report his belief that he suffers from an occupational illness before an actual diagnosis from a physician. Further, the Appeals Board stated, "[e]ven though notice is not given and the employer is without knowledge this will not bar a claim, as a rule, unless the employer has been prejudiced by lack of notice." *Id.* at *10-11.

Here, a dispute exists concerning the reason for Mr. Skinner's separation from Marion in June 2016. The medical records indicate Mr. Skinner reported to Marion that his symptoms forced him to retire. Conversely, Marion claimed it terminated Mr. Skinner due to his intoxication while at a job site. As such, the date his illness manifested itself and affected his capacity to work is unclear. However, the record is clear that Marion received notice of Mr. Skinner's alleged occupational illness on November 30, 2016, or December 1, 2016, prior to his diagnosis of CIRS. Marion did not establish it was prejudiced by the purported delay even assuming Mr. Skinner was required to provide notice thirty days following his separation from Marion in June 2016. Accordingly, this Court concludes Mr. Skinner came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits that he provided sufficient notice of his occupational illness.

### *Causation*

To be compensable, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14). An injury means "an occupational disease . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable

5

degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

An injury is deemed to arise primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). An injury is shown to a reasonable degree of medical certainty if "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14).

Here, the issue is whether Mr. Skinner's symptoms arose primarily out of the work he performed at Marion. While Mr. Skinner produced documentation from his physician stating a diagnosis of CIRS related to his employment, Dr. Oenbrink's records are silent as to the black mold remediation Mr. Skinner performed at his home. Additionally, this Court finds Marion successfully attacked Dr. Oenbrink's credibility based upon the physician's NCMB disciplinary report finding Dr. Oenbrink made a false statement and engaged in unprofessional conduct. Dr. Oenbrink himself suggested bias against insurers in his email commentary to Mr. Skinner.

Marion admitted it offered Mr. Skinner a selection from a qualified panel of physicians in the Knoxville area to evaluate his alleged occupational illness and its causal relationship to his employment at Marion. However, Mr. Skinner purportedly declined the proffered panel.

Upon careful review of the written materials, the Court concludes Mr. Skinner did not come forward with sufficient evidence that he is likely to prevail at a hearing on the merits that his alleged occupational illness arose primarily out of and in the course and scope of his employment with Marion at this time. However, this Court holds Mr. Skinner established sufficient notice of his alleged occupational illness, which entitles him to a panel of physicians for the evaluation and treatment of a work-related occupational illness. Therefore, Mr. Skinner shall select a physician from the panel previously provided by Marion, and this selected physician shall become the authorized treating physician.

In light of this Court's conclusions above, Mr. Skinner's claims for reimbursement of past medical expenses, temporary disability benefits, and attorney's fees are denied at this time. Mr. Skinner shall have the right to pursue these benefits at a later Expedited or Compensation Hearing.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Skinner shall select a physician from the previously offered panel for evaluation and treatment of his alleged occupational illness. The physician selected from the panel shall become the authorized treating physician under Tennessee Code Annotated section 50-6-204.

2. Mr. Skinner's claim for reimbursement of past medical expenses, temporary disability benefits, and attorney's fees is denied at this time, but he retains the right to pursue these benefits at a later date.

3. This matter is set for a Scheduling Hearing on **November 20, 2017**, at **1:30 p.m. Eastern Time**. The parties must call (865) 594-0091 or (toll-free) (855) 543-5041 to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Carrier must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED the 16th day of October, 2017.**

_____
**PAMELA B. JOHNSON, JUDGE**
Court of Worker's Compensation Claims

7

# APPENDIX

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed the following documents, marked as exhibits for ease of reference:

**Exhibits:**
1. Petition for Benefit Determination
2. Dispute Certification Notice
   a. Petition for Benefit Determination
   b. First Report of Work Injury, Form C-20
   c. Wage Statement, Form C-41
   d. Notice of Denial of Claim for Compensation
   e. Emails to/from Mediator and Mr. Skinner
   f. IDENTIFICATION PURPOSES ONLY: Mold Calendar Search[6]
   g. IDENTIFICATION PURPOSES ONLY: AmeriSci Bio-Chem Analytical Data[7]
   h. Medical Source Statement of Ability to Do Work-Related Activities[8]
   i. Marion's Position Statement
3. Show Cause Order
4. Order Setting Deadline to File Request for Hearing
5. Request for Scheduling Order
6. Order Setting Status Conference
7. Request for Expedited Hearing
   a. Affidavit of John Matthew Skinner
   b. IDENTIFICATION PURPOSES ONLY: Analytical Data Sheets (REH Exhibits 1.1-1.4)[9]
   c. IDENTIFICATION PURPOSES ONLY: 2013-2016 Calendar (REH Exhibits 2-5)[10]

---

[6]Marion objected on the bases of relevance, hearsay, confusing the issues and cumulative, and lack of authentication. Mr. Skinner responded and argued the document was relevant, a statement made by the declarant at the hearing level, and authenticated by his affidavit. The Court sustained the objections on the bases of hearsay and lack of authentication.

[7]Marion objected to admissibility on the bases of relevance and lack of authentication. Mr. Skinner responded and argued the document was relevant, a business record, and authenticated by his affidavit. The Court sustained the objection based on lack of authentication.

[8]Marion objected to admissibility based on relevancy. Mr. Skinner responded and argued the statement regarding his health and ability to work is relevant to his workers' compensation claim. The Court agreed and overruled the objection.

[9]Marion objected to admissibility on the bases of relevance and lack of authentication. Mr. Skinner responded and argued the document was relevant, a business record, and authenticated by his affidavit. The Court sustained the objection based on lack of authentication.

8. Notice of Filing Additional Medical Records
   a. Table of Contents
   b. Great Smokies Medical Center Medical Record Certification
   c. Great Smokies Medical Center Medical Records
   d. R.J. Oenbrink, D.O., Letter of Causation
   e. R.J. Oenbrink, D.O., Medical Record Certification
   f. R.J. Oenbrink, D.O., Medical Records
   g. Great Smokies Medical Center Letter of Care, dated 05/04/17
9. Marion's Motion for Extension of Time
10. Agreed Order Allowing Extension of Time
11. Marion's Response to Mr. Skinner's Request for Expedited Hearing
   a. First Report of Work Injury, Form C-20
   b. Wage Statement, Form C-41
   c. Panel of Physician, Form C-42
   d. Affidavit of Ellen Gallant
   e. Affidavit of Drake Taylor
   f. Affidavit of Thomas B. Lasley
   g. North Carolina Medical Board Record of Dr. Raymond Joseph Oenbrink, D.O.
   h. Dr. Oenbrink Letter to North Carolina Governor Pat McCrory
   i. Charges under the Maryland Medical Practice Act, Case Nos. 2010-0765 and 2010-0912
   j. Department of Health and Human Services Letter to Ritchie C. Shoemaker, M.D.
12. Marion's Objections to Admissibility
13. Mr. Skinner's Motion for Additional Time
14. Marion's Response to Mr. Skinner's Motion for Additional Time
15. Order Granting Mr. Skinner's Motion for Additional Time
16. Mr. Skinner's Responses to Marion's Objections to Admissibility

---

[10]Marion objected on the bases of relevance, hearsay, lack of original document, and lack of authentication. Mr. Skinner responded and argued the document was relevant, a statement made by the declarant at the hearing level, and authenticated by his affidavit. The Court sustained the objections on the bases of hearsay, lack of original document, and lack of authentication.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on the 16th day of October, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|---------------|-----|-------|------------------|
| Jonathan W. Doolan, Employee's Attorney | | | X | jonathan@collinsdoolan.com |
| Heather H. Douglas, Employer's Attorney | | | X | hdouglas@manierherod.com |

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

10